545 A.2d 487

Fire Fighters, Local Union, No. 1, Appellant *v.* Civil Service Commission of City of Pittsburgh, Appellee.

Argued May 24, 1988, before Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Stanford A. Segal,* with him, *Michael J. Colarusso, Gatz, Cohen, Segal* & *Koerner,* for appellant.

*Joseph F. Quinn,* Assistant City Solicitor, with him, *D. R. Pellegrini,* City Solicitor, for appellee.

OPINION BY JUDGE CRAIG, August 11, 1988:

May Pittsburgh, as a home-rule city, lawfully avoid applying a civil service statute's competitive selection provisions to two new "assistant" positions in charge of fire suppression and prevention directly under the fire bureau's chief, when that statute has provided that:

> All positions in bureaus of fire, except as here and after [sic] provided, . . . in cities of second class, shall be in the competitive class of the civil service of such cities. This act shall not apply to or include chief officers of bureaus of fire under the director of the department, by whatever title his position may be designated, nor to chief clerks in bureaus of fire in such cities.

Act of June 27, 1939, P.L. 1207, §1 (Firefighters Civil Service Act), *as amended* by Act of July 3, 1963, P.L.

186, §1; 53 P.S. §23491. The 1963 amendment deleted a former exemption of the fire chief's "ranking deputy, by whatever title his position may be designated."

Because there is no claim that these two new positions come within the remaining exemptions granted solely for fire chief and chief clerk, they must come within the competitive civil service class unless Pittsburgh's home-rule status allows the city to ignore the statute in this respect.

Although Pittsburgh adopted a home rule charter in 1974 under the Home Rule Charter and Optional Plans Law, section 302(b)(v) of that law places a continuing limitation on the city's personnel management, as follows:

> (b) No municipality shall . . . (v) enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits, or working conditions of any employee of a political subdivision of the Commonwealth.

Act of April 13, 1972, P.L. 184, §302(b)(v), *as amended,* 53 P.S. §1-302(b)(v).

Because the 1963 civil service law obviously is, in relation to the 1972 home-rule law, a "heretofore enacted" statute "affecting the rights, benefits, or working conditions" of the fire bureau employees, the pivotal question therefore is:

> Is the city's creation of two "assistant" positions, immediately under the fire chief, as positions outside competitive civil service, an action inconsistent with a statute which requires *all* positions (except fire chief and chief clerk) to be civil service?

Because the answer to that question is necessarily affirmative—particularly when the legislature has explicitly eliminated exemption for ranking deputies, however called—we reverse.

## History

Fire Fighters Local Union No. 1 has appealed to this court from an order of the Court of Common Pleas of Allegheny County which affirmed[1] a Pittsburgh Civil Service Commission adjudication upholding the city's negation of civil service protection for the two assistant positions to the fire chief.

Because there is no dispute concerning the essential facts, there remains only a question of law, over which this court has plenary power of review. *Tegzes v. Township of Bristol,* 504 Pa. 304, 472 A.2d 1386 (1984); 2 Pa. C. S. §754.

The commission expressly found that: "Since 1963, all of the Deputy Chiefs in the Fire Bureau have been in the Competitive Civil Service Classification" as a result of the Civil Service Law amendment secured from the legislature by the union on the basis of its claim that the city had selected deputy chiefs before 1963 for reasons other than demonstrated leadership, ability or expertise. The commission found that the deputy chiefs are in charge of fire suppression, functioning as shift commanders.

The commission also found that, before the 1985 reestablishment of a Department of Public Safety in Pittsburgh, the fire chief, as head of the bureau, reported directly to the mayor. According to the pertinent portions of a tabulation set forth in the commission's adjudication—with a dashed line representing the division between the exempt positions above and the civil

---

[1] In affirming the adjudication of the Civil Service Commission, the trial court gave no explanation other than that constitutional rights "have not been violated, and that the adjudication of the local agency is legally sufficient to support the findings and the adjudication" made by that local agency, the Civil Service Commission.

service positions below—the top command of the fire bureau, before change, was as follows:

| Fire Chief |
| --- |
| Deputy Chiefs          Fire Prevention Captain |

After the city reestablished a Department of Public Safety in 1985 with a Public Safety Director at its head, over the fire bureau as well as other bureaus, the proposed fire bureau top command organization (at issue here) was depicted by the commission's adjudication, in pertinent part, as follows:

| Fire Chief/Deputy Director |
| --- |
| Assistant Director            Assistant Director<br>(Fire/Suppression)            (Fire/Prevention) |
| Deputy Chiefs          Fire Prevention Captain |

Again, the dashed line divides the proposed exempt assistant provisions, above, from the competitive civil service positions below. (An administrative assistant position was also proposed, but is not involved in this litigation.)

The commission specifically found that "[t]he Assistant Director (Fire/Suppression) will report to the Fire Chief (now called Deputy Director/Fire Chief)."

The commission also found that the second new position, the assistant for fire prevention, would also report to the fire chief and that such assistant "will be in charge of the approximately ten (10) Firefighters previously working on fire prevention . . ." as well as certain

building inspectors and police officers assigned to fire prevention duties. The commission noted that, before the 1985 changes, the firefighters working on fire prevention reported to the Fire Prevention Captain (see first table above), covered by civil service, who reported to the fire chief.

In the final portion of its adjudication, the commission found "that the three positions under consideration are new positions and that the rights of Firefighters to be promoted to positions in the Fire Bureau, as those positions existed in 1972 when the Home Rule Charter and Optional Plans Law was enacted, have not been altered or diminished by the Ordinance classifying these positions as Exempt, Non-Career." The commission noted that four deputy chief positions and the fire prevention captain position remain.

The commission added that the new positions would absorb some of the duties of the fire chief and would assist the fire chief in collective bargaining; the pre-existing deputy chiefs, covered by civil service since 1963, would not assist the management side in bargaining because they are part of the union bargaining unit. Of course, any reliance upon bargaining unit status to determine the validity of civil service exemption would tend to beg the question; in logical and practical sense, the matter of civil service status under the law is arguably the fundamental first question to be answered, and how that question is answered may then be a factor partly determining collective bargaining role, in that civil service tenure (or lack of it) certainly affects the distance between a supervisor and management.

The commission also found that the "new positions will not take on the duties of the Deputy Chiefs or the Fire Prevention Captain." However, that finding provides small help. Of course, the new positions will not assume *all* of the duties of the existing jobs, which are

not being abolished. But the commission depicted one of the new positions as supplanting the deputy chiefs as the ranking officer under the fire chief with respect to fire suppression. And, according to the commission's own findings noted above, the other new position will take over as the top commander of the firefighters working on fire prevention, in place of the fire prevention captain.

## Analysis

The unambiguous statutory provisions tell us that the rights of city employees before the 1972 Home Rule Law included the right to have "All positions" in the bureau of fire governed by civil service excepting *only* the *fire chief* and *chief clerk*. Before the 1963 amendment, the exemption included the fire chief's "ranking deputy by whatever title his position may be designated," but the 1963 legislature took pains to delete that particular phrase, and thus unequivocally communicated the proposition that, whatever title may be chosen, the ranking deputy or assistant to the fire chief would not share his exemption but would be covered by competitive civil service.

Neither the commission nor the trial court confronted the straightforward words of the statute.

First, the commission apparently would exempt the assistant positions mainly because they are new, noting that the civil service positions "which existed in 1972 . . . have not been altered or diminished . . . ."

However, the home-rule constraint does not merely say that a city cannot alter or diminish previous positions which presented promotion opportunity.

It bars "any provision inconsistent" with a prior statute "affecting rights." The 1963 statute is a prior statute, it unarguably affects the rights of employees, and it plainly says that *all* positions in the bureau "shall

be" competitive, other than fire chief and chief clerk. Obviously, *to create further exempt provisions is inconsistent with that stated limit on exemptions.*

The fact that the positions are new ones cannot be decisive. As contemplated by the home-rule limitation, a "provision inconsistent" with the civil service certainly can involve new positions when the assured scope of civil service ("All positions") is bureau-wide, aside from the two inapplicable exemptions.

Another aspect of the commission's approach appears to be that the two new positions embrace some of the duties of the fire chief position and therefore somehow should share its exemption from civil service regulation. By so stating, the commission actually underscores the point that the city has conceived each of these positions as a new "ranking deputy" to the fire chief, albeit with a different title. That kind of position is precisely the kind of position which the legislature moved back under civil service in 1963, by then eliminating exemption for any "ranking deputy, by whatever title . . . ."

In short, the status of employee rights before the home rule law of 1972 was the statutory right to have *all* fire bureau positions, except fire chief and chief clerk, remain under civil service. As of 1972, a firefighter in the Pittsburgh Fire Bureau could look at the statute, as amended in 1963, to be reassured of a right to compete for promotion to any position in the fire bureau, other than bureau chief or chief clerk, upon an objective civil service status. The home rule law bars enactment of any provision inconsistent with that right, and the city's attempt to create by ordinance new assistant chief positions—to be filled by discretionary appointment rather than by competition—is therefore inconsistent with the civil service statute "affecting the rights" of the firefighters.

### Conclusion

The Civil Service Commission, in its adjudication, and the trial court, in its affirmance of that adjudication without explanatory opinion, erred as a matter of law. The decision is reversed.

### ORDER

Now, August 11, 1988, the order of the Court of Common Pleas of Allegheny County, at No. S. A. 1985 of 1985, dated November 10, 1987, is reversed.