644 A.2d 246

**FRATERNAL ORDER OF POLICE, FORT PITT LODGE NO. 1, an unincorporated association, Glen Ellyn Reid, an individual and Regis Holler, an individual**

v.

**CITY OF PITTSBURGH and Civil Service Commission of the City of Pittsburgh, Appellants.**

Commonwealth Court of Pennsylvania.

Argued March 3, 1994.

Decided June 15, 1994.

Mari Anne Malloy, for appellants.

Bryan Campbell, for appellees.

Before McGINLEY and FRIEDMAN, JJ.; and RODGERS, Senior Judge.

RODGERS, Senior Judge.

The City of Pittsburgh (City) and the Civil Service Commission of the City of Pittsburgh (Commission) appeal from an order of the Court of Common Pleas of Allegheny County that

was handed down as a result of a petition filed by the Fraternal Order of Police, Fort Pitt Lodge No. 1, Glen Ellyn Reid and Regis Holler [1] (collectively FOP) seeking a declaratory judgment and injunctive relief from Pittsburgh City Council's enactment of Ordinance 26. We affirm in part and reverse in part.

Prior to the enactment of Ordinance 26, a contract arbitration between the City and the FOP resulted in an award in which the FOP's senior members could elect a type of enhanced retirement package. Members who are fifty years of age, and have twenty-five years of service can receive a seventy-five percent pension benefit if they retire by December, 31, 1995. Because almost fifty percent of the City's police force, composed mostly of the most senior, experienced officers, qualify for this benefit, the City faces a possibly large reduction in the numbers of experienced personnel in the police department. To fill this need, the City determined that a new procedure was required so as to allow for the hiring of experienced police officers; thus, Ordinance 26 was enacted.

Ordinance 26 authorizes the Commission to certify individuals to entry level police officer positions without regard to ranking on eligibility lists secured through civil service testing. The ordinance further provides that, at a minimum, police officer positions to be filled without competition require the applicant to have at least one year of law enforcement experience and to hold a current certification as a police officer or be able to obtain such certification. This list of certified officers compiled by the Commission is to be alphabetized and submitted to the Director of Public Safety, who is then permitted to fill vacancies by selecting from this list, relying on background investigations as to prior employment and experience, relevant education, and character, but with no reliance on any competitive testing.

1. The Fraternal Order of Police, Fort Pitt Lodge No. 1, is the exclusive bargaining representative for all police officers employed by the City. Reid and Holler are applicants, presently on a list of eligible candidates, who have passed written civil service tests offered by the Commission for entry level police officer positions in the City.

At the time that Ordinance 26 was enacted, a valid eligibility list of over 2000 candidates for police officer positions existed. This list included both certified officers and applicants without experience. With the passage of Ordinance 26, a second list was created, containing only names of certified officers. (The individual plaintiffs here are applicants on the already existing eligibility list, but having no prior police work experience they do not meet the requirements established for the Ordinance 26 list.)

In June, 1992, pursuant to the dictates of Ordinance 26, the Director of Public Safety notified the Commission that public safety required the appointment of certified police officers without competition to fill sixty vacancies on the force. A list of more than 200 applicants that met the minimum requirements of Ordinance 26 was submitted to the Director; none of these applicants had been tested or ranked. Thirty conditional offers of employment were extended. At this point the FOP filed the present action.

The issues raised by the FOP in their request to the trial court for declaratory and injunctive relief were: (1) whether the City can enact an ordinance that directs the Commission to compile and submit to the Director of Public Safety a list of applicants who meet the minimum requirements as stated in Ordinance 26, i.e., one-year experience and certification; and (2) whether the City can enact an ordinance that directs that this applicant list be unranked, allowing the Director of Public Safety to hire any applicant on that list.

In response to the first issue raised, the trial court explained that the City, as a home rule municipality, having adopted the Home Rule Charter and Optional Plans Law (Home Rule Charter Law),[2] may enact any ordinance unless the ordinance involves an exercise of power denied to the City by the Pennsylvania Constitution, the City's own charter or an act of the General Assembly. The trial court opined that nothing in the Constitution, the City's charter or an act by the General Assembly "bars the City of Pittsburgh from enacting

2. Act of April 13, 1972, as amended, 53 P.S. §§ 1–101–1–1309.

an ordinance that adopts minimum qualifications for police officer positions which require prior law enforcement experience and certification/training or that permits dual certification lists when there is a need to impose these additional requirements." (Trial Court Opinion, p. 7.) The trial court also indicated that the City may enact ordinances that supplement civil service legislation and that having a second list comprised of only experienced police officers does not conflict with the purposes of civil service legislation governing second class cities.

We note that the trial court, in discussing what it believes to be the controlling civil service law applicable to second class cities, refers to Section 14 of the General Civil Service Law,[3] which provides that entry level police officer positions shall be filled by police departments, selecting one candidate from the three applicants at the top of an appropriate eligibility list. This section, however, has been repealed as to employees in bureaus of police in cities of the second class by the Policemen's Civil Service Act.[4] Therefore, where a provision of the Policemen's Civil Service Act deals specifically with a particular matter, the provision of the General Civil Service Act dealing with the same specific subject is not applicable to police officers of a second class city. *Civil Service Commission v. Paieski*, 126 Pa.Commonwealth Ct. 263, 559 A.2d 121 (1989), *petition for allowance of appeal denied*, 524 Pa. 635, 574 A.2d 75 (1990). Section 1 of the Police Civil Service Act, 53 P.S. § 23531, which provides that all entry level police officer positions shall be in the competitive class of the civil service for cities of the second class, appears to partially cover the content of Section 14 of the General Civil Service Law and, thus, is applicable to the issues here.

Concerning the trial court's granting of the FOP's request for injunctive relief by disallowing the Commission's

3. Act of May 23, 1907, P.L. 206, *as amended*, 53 P.S. § 23446.
4. Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §§ 23531–23540.

submission of an alphabetical unranked list and the Director of Public Safety's hiring from such a list, the trial court stated that under Section 301 of the Home Rule Charter Law, 53 P.S. § 1–301, "the City may exercise only powers 'not denied by the General Assembly at any time'" (Trial Court Opinion, p. 10) and that civil service legislation is such legislation that limits the City's power. Moreover, the trial court reasoned that because the City could not show explicit language anywhere in the law that gave it power to supersede "legislation restricting the manner in which a municipality may exercise its powers, it [was] reasonable to assume that the Legislature intended to preserve existing restrictions on the exercise of municipal power." (Trial Court Opinion, p. 13.) Thus, the trial court erroneously concluded that enactments by the legislature that did not apply to every municipality within the Commonwealth, such as the civil service laws, each one applying to a separate class of municipality through a series of laws rather than an all encompassing statute, could still prevent or limit a home rule charter municipality from enacting an ordinance that would supersede acts of the General Assembly.

After hearing, the trial court ordered that the portion of Ordinance 26 permitting the Commission to create a second list of only certified police officers could stand, but issued an injunction prohibiting the hiring of such officers without their being ranked after competitive testing. The trial court's order also required that subsequent selection comply with Section 14 of the General Civil Service Law. The City and the Commission appeal this order to this Court.

The issue to be decided here is whether the City has the authority under the Home Rule Charter Law to enact an ordinance that supersedes or is inconsistent with the civil service law that is applicable to cities of the second class.

■ We begin our analysis by examining the portion of the Home Rule Charter Law that sets forth the powers granted to a municipality that has chosen to adopt a home rule charter. Section 301 of the Home Rule Charter Law, 53 P.S. § 1–301, states:

A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by its home rule charter or by the General Assembly at any time. All grants of municipal power to municipalities governed by a home rule charter under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.

Thus, a presumption exists "that the exercise [of power] is valid if no restriction is found in the Constitution, the charter itself, or the acts of the General Assembly." *Norristown Fraternal Order of Police, Lodge 31 v. DeAngelis,* 148 Pa.Commonwealth Ct. 285, 291–92, 611 A.2d 322, 326 (1992). The *Norristown* court opined that the legislative boundaries found within Section 301 indicate that the legislature intended that a home rule charter municipality not be permitted to supersede state legislation.

The analysis, however, does not end here. We next examine Section 302 of the Home Rule Charter Law, 53 P.S. § 1–302, the portion of the act that more specifically delineates the limitations on a municipality's powers. The legislature has listed subject areas in which a home rule charter municipality has not been given any power or authority. The portions of Section 302, relevant to the issue before us, state:

(b) No municipality shall ... (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth, ... (v) enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth.

The enactment of Section 302 established the areas in which the legislature would continue to control the municipalities of the Commonwealth. The *Norristown* decision is an example of this Court's interpretation that the area of state legislation dealing with police officer promotions cannot be superseded by a municipality's enactment. At first glance *Norristown* ap-

pears to be controlling because the issue raised is similar to the one raised here. However, on closer examination we find, as did the trial court, *Norristown* inapposite. The fact that *Norristown* dealt with a borough's rather than a second class city's exercise of power is of no moment, but the distinction between present employee promotions at issue in *Norristown* rather than the appointment of new personnel at issue here is paramount to our decision.

*Norristown* concerned present employees of the municipality and, therefore, fell within the parameters of Section 302(b)(v) of the Home Rule Charter Law, which prohibits a municipality's interference with statutory protections enacted by the legislature that affect the rights, benefits and working conditions of its employees. As a result, the civil service sections of the Borough Code (Code) [5] control and the municipality was limited by those sections that apply to the promotion of its police officers and fire fighters.

*Fire Fighters, Local Union, No. 1 v. Civil Service Commission of City of Pittsburgh,* 118 Pa.Commonwealth Ct. 498, 545 A.2d 487 (1988), *aff'd,* 524 Pa. 278, 571 A.2d 377 (1990), is another case, exemplifying a situation limited by Section 302(b)(v) of the Home Rule Charter Law. *Fire Fighters* involved the establishment of two new assistant positions under the fire chief and whether the city could in filling these positions avoid the application of the civil service law covering fire fighters.[6] The court interpreted the Firemen's Civil Service Act as encompassing all positions within the department except that of chief. The court further indicated that although these positions were newly created they presented promotion opportunity for present personnel and, thus, involved the status of an employee's right to compete for promotions based upon objective civil service status. The court then held that the "home rule law bars enactment of any provision inconsistent with [employee] right[s], and the city's

5. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §§ 46171–46195.

6. Act of June 27, 1939, P.L. 1207, *as amended,* 53 P.S. §§ 23491–23498 (Firemen's Civil Service Act).

attempt to create by ordinance new assistant chief positions—to be filled by discretionary appointment rather than by competition—is therefore inconsistent with the civil service statute 'affecting the rights' of the firefighters." *Id.* at 505, 545 A.2d at 490.

■ Again the holding in *Fire Fighters* would at first appear to control our decision here but, as in *Norristown*, we can distinguish it from the case before us. *Fire Fighters* concerned promotion possibilities within the department, and here we are not concerned with present employees. The City's Ordinance 26 attempts only to affect applicants for positions with the police force; therefore, Section 302(b)(v) of the Home Rule Charter Law, which prohibits enactments by a municipality that affect employees, is not applicable.

Having concluded that Section 302(b)(v) cannot prevent the City's enactment of Ordinance 26, we must examine whether any acts of the General Assembly, that are applicable in every part of the Commonwealth [7] or are uniform and applicable throughout the Commonwealth,[8] can prevent the City from enacting Ordinance 26.

■ The FOP argues that the General Civil Service Law and the Policemen's Civil Service Act are statutes passed by the General Assembly that prevent the City's enactment of Ordinance 26 because they intend that police officer appointments in cities of the second class be based on objective competitive testing with selection effectuated according to a candidate's ranking. However, the relevant question is whether the General Civil Service Law and the Policemen's

7. Section 302(b)(ii) of the Home Rule Charter Law, 53 P.S. § 1–302 (quoted above).

8. Section 302(c) of the Home Rule Charter Law, 53 P.S. § 1–302(c), states:

> (c) Acts of the General Assembly in effect on the effective date of this act that are uniform and applicable throughout the Commonwealth shall remain in effect and shall not be changed or modified by this act. Acts of the General Assembly enacted after the effective date of this act that are uniform and applicable throughout the Commonwealth shall supersede any municipal ordinance or resolution on the same subject.

Civil Service Act are acts of the General Assembly which are uniform and applicable in every part of or throughout the Commonwealth.

Neither party has cited cases that construe the phrase "applicable in every part of the Commonwealth" or "uniform and applicable throughout the Commonwealth" as they pertain to cities of the second class, nor have we located any. We must, therefore, rely on interpretations of these phrases as they are used in the enabling act for cities of the first class. *See* First Class City Home Rule Act (FCCHRA), Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101–13157.

In *Addison Case*, 385 Pa. 48, 122 A.2d 272 (1956), *appeal dismissed*, 352 U.S. 956, 77 S.Ct. 353, 1 L.Ed.2d 316 (1957), the court was confronted with an issue concerning the jurisdiction and power of the court of common pleas to hear an appeal by an aggrieved employee (a city patrolman) from a decision of the civil service board; specifically, it was argued that an act [9] that allegedly had state-wide applicability superseded a section of the home rule charter [10] because Section 18 of the FCCHRA, 53 P.S. § 13133, prevented the city from "exercis[ing] powers contrary to, or in limitation or enlargement of, powers granted by act of the General Assembly which are . . . (b) Applicable in every part of the Commonwealth. (c) Applicable to all the cities of the Commonwealth." *Id.* at 53, 122 A.2d at 274.

The *Addison* court, citing *Lennox v. Clark*, 372 Pa. 355, 93 A.2d 834 (1953), *overruled on other grounds*, *Walsh v. Tate*,

9. Act of September 29, 1951, P.L. 1654, 53 P.S. § 304, provided that "[a]ll decisions of the civil service boards and commissions in any city shall be subject to appeal to the court of common pleas or the county court of the county in which the city is located. The appeal may be taken, by any employee aggrieved thereby, at any time within thirty days after the decision has been entered of record." *Addison*, 385 Pa. at 53–54, 122 A.2d at 274.

10. Section 7–201 of Philadelphia's Home Rule Charter stated that "[f]indings and decisions of the [Civil Service] Commission and any action taken in conformance therewith as a result thereof shall be final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds." *Addison*, 385 Pa. at 53, 122 A.2d at 274.

444 Pa. 229, 282 A.2d 284 (1971), held that the removal or discharge of a city employee is not a state-wide matter but one of only local concern; thus, the home rule charter provision prevails and not the general statute. The *Addison* court explained that:

[I]t being abundantly clear that the limitations of power referred to in section 18 [of the FCCHRA] concern only laws in relation to substantive matters of State-wide concern, such as the health, safety, security and general welfare of all the inhabitants of the State, and not to matters affecting merely the *personnel* and *administration* of the offices local to Philadelphia and which are of no concern to citizens elsewhere. Any other conclusion would reduce the Charter to a mere scrap of paper and make the much heralded grant of Philadelphia home rule an illusion and a nullity.

*Addison,* 385 Pa. at 55, 122 A.2d at 275 (quoting Chief Justice Stern in *Lennox,* 372 Pa. at 379, 93 A.2d at 845) (emphasis in original). Thus, the provision in Philadelphia's home rule charter prevailed.

*Commonwealth v. Cabell,* 199 Pa.Superior Ct. 513, 185 A.2d 611 (1962), is another case where one of the issues concerned whether Section 18(c) of FCCHRA prohibited Philadelphia's exercise of power through its charter that was contrary to acts of the General Assembly. Specifically, Cabell argued that various civil service statutes enacted by the legislature invalidated Philadelphia's charter provision that makes fraud in civil service testing a crime for which fines and imprisonment can be imposed by the city. Although the trial court set out the numerous civil service acts in effect at the time, finding them controlling and, thus, limiting the city from exercising power to impose penalties, the Superior Court held that these civil service statutes were not identical nor uniform throughout the Commonwealth. The *Cabell* court stated that "[i]t is hard to see how this series of acts, one for each class of city, varying in penalty and concerned with the violation of separate statutes, can be construed as a granted power '[a]pplicable to all the cities of the Commonwealth.'" *Id.* at 524, 185 A.2d at 617.

The *Cabell* court then quoted Chief Justice Stern's opinion in *Lennox,* as we have above.

The reasoning in *Cabell* is germane to the issue before us today. The civil service laws that the FOP represents to be controlling here are not statutes enacted by the legislature that apply to all municipalities throughout the Commonwealth. As we have noted above, Section 14 of the General Civil Service Law, 53 P.S. § 23446, which provides for appointments from the competitive class with ranking through examination, is repealed as to employees in bureaus of police in cities of the second class by the Policemen's Civil Service Act, 53 P.S. §§ 23531–23540, which is applicable only to cities of the second class. Following the reasoning in *Cabell,* neither the General Civil Service Law nor the Policemen's Civil Service Act can be held to apply in *every part of the Commonwealth.*[11]

Thus, we hold that the City's enactment of Ordinance 26 is not prohibited by Section 302 of the Home Rule Charter Law, because it is not contrary to acts of the General Assembly applicable in every part of the Commonwealth. We affirm the trial court's order permitting the Commission to create a second list consisting of only certified police officers. However, we reverse the trial court's issuance of the injunction that prohibits the hiring of these certified officers without ranking through competitive testing.

The trial court expressed concern that Ordinance 26 unwisely grants to the Director of Public Safety the discretion to hire certified officers without ranking by the Commission, through competitive testing, measured by test scores. However, it is not claimed that any of the experienced police officers on the Ordinance 26 eligibility list is unqualified. If desired, the legislature may amend the law, or the Home Rule Charter

11. *See also Greenberg v. City of Bradford,* 432 Pa. 611, 248 A.2d 51 (1968). In *Greenberg,* the Supreme Court, relying on *Lennox,* held that a third class city that had adopted a charter pursuant to the Optional Third Class City Charter Law, Act of July 15, 1957, P.L. 901, 53 P.S. § 41101, was not required to adhere to compensation standards for police and fire fighters established in acts of the General Assembly pertaining to third class cities.

may be amended, or the collective bargaining agreement may be altered. In any event, the wisdom of such a policy is not a question to be decided by this Court.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

NOW, June 15, 1994, the order of the Court of Common Pleas of Allegheny County, at No. GS 92–19421, dated January 22, 1993, is affirmed in part and reversed in part, consistent with the foregoing opinion.

McGINLEY, Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that neither the provisions of the General Civil Service Law, or the Policemen's Civil Service Act, which require ranking of eligible police officer candidates through competitive testing, apply to Pittsburgh. Rather, I agree with the trial court that the purpose of Section 301 of the Home Rule Charter Law, which allows a home rule municipality to exercise any powers and perform any functions not denied by the General Assembly, was not to restrict the General Assembly's ability to limit, through civil service legislation, the *manner* in which the City hires its employees. *See* Opinion of the Court of Common Pleas, November 24, 1992, at 13–14.

Furthermore, in *Fire Fighters, Local Union, No. 1 v. Civil Service Commission of City of Pittsburgh*, 118 Pa.Commonwealth Ct. 498, 545 A.2d 487 (1988), *affirmed* 524 Pa. 278, 571 A.2d 377 (1990), this Court addressed a similar issue of whether the City of Pittsburgh, as a home-rule city, may lawfully avoid applying a civil service statute's competitive selection provisions to two newly-created "assistant" positions directly under the fire chief. This Court noted that Section 302(b)(v) of the Home Rule Charter Law limits the city's personnel management as follows:

(b) No municipality shall ... (v) enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits, or working conditions of any employee of a political subdivision of the Commonwealth.

53 P.S. § 1–302(b)(v).

Because the civil service statute qualified as a prior statute affecting the rights of all employees other than the fire chief and chief clerk, we held that the City's proposed ordinance, which was inconsistent with the civil service statute, was therefore invalid.

I believe that *Fire Fighters* is controlling in the present controversy and I would hold that, pursuant to Section 302(b)(v) of the Home Rule Charter, Ordinance No. 26 is invalid as being inconsistent with the competitive selection provisions of the General Civil Service Law and the Policemen's Civil Service Act.[1]

I would affirm the trial court.

---

1. In *Fire Fighters* we also noted that the limitation in Section 302(b)(v) applies to new positions when the scope of the civil service statute is bureau-wide, as it is in the present case. 118 Pa.Commonwealth Ct. at 505, 545 A.2d at 490.