**In re Pittsburgh Citizen Police Review Board**

436

C.P. of Allegheny County, no. GD10 -001338.

*Hugh F. McGough,* for petitioner.
*Paul D. Krepps* and *Alan E. Johnson,* for respondent Harper.
*Daniel D. Regan, city solicitor, John F. Doherty, associate city solicitor, Michael Kennedy, assistant city solicitor,* and *Wendy Kobe, assistant city solicitor,* respondent for City of Pittsburgh.

WETTICK JR., *J.* September 23, 2010—The motion of the Pittsburgh Citizen Police Review Board to compel production of 309 pages of un-redacted police reports is the subject of this opinion and order of court.

In September 2009, the croup of 20 Finance Ministers and Central Bank Governors (G-20) met in Pittsburgh. During and after the G-20 meeting, more than 200 persons were arrested. The Police Review Board received numerous complaints of alleged police misconduct. On October 20, 2009 and November 10, 2009, the Police Review Board held public hearings regarding police/citizen encounters involving G-20 activities. These hearings were held in connection with a board-initiated investigation of the policies, procedures, and circumstances surrounding the police/citizen encounters.

Through a subpoena to the chief of police of the City of Pittsburgh, the Police Review Board is seeking two categories of information.[1] The first category is arrest reports and related documents pertaining to 29 arrests made in connection with G-20 activities.[2] The second category is large numbers of documents relating to the G-20 activities of the City of Pittsburgh Police and police officers from other jurisdictions serving to as Pittsburgh Bureau Police Officers. These documents are relevant for an overall review of the manner in which law enforcement responded to G-20 activities.

At the direction of the mayor of the City of Pittsburgh, counsel for the city took the position that the city shall not honor these subpoenas because the Police Review Board exceeded its authority in issuing subpoenas for an investigation initiated by the board. It was the position of the mayor that the role of the Police Review Board is limited to investigating verified complaints of police misconduct.

Counsel for the Police Review and contended that the city's position ignored several provisions of a 1997 ordinance governing the role of the Police Review Board which permits the board to initiate investigations and studies of incidents of alleged police misconduct for which no complaint has been filed, to hold public hearings, and to make recommendations on policy matters that may improve the relationship between the bureau of police and the community, including matters involving police training, hiring, and discipline.

1. Section 662.07 of the 1997 ordinance permits the board to issue subpoenas.

2. Only five of these 29 persons who were arrested filed complaints with the Police Review Board.

In an opinion and court order dated March 18, 2010, I ruled in favor of the Police Review Board. I said that the 1997 amendments to the Home Rule Charter establishing an Independent Citizen Police Review Board authorized City Council to adopt an ordinance granting the Police Review Board the power to initiate investigations of incidents of alleged police misconduct for which no complaint has been filed, and to initiate studies and investigations for the purpose of making recommendations on policy matters that may improve the relationship between the police department and the community, including matters involving police training, hiring, and discipline.

My court order required the city to produce the documents described in the subpoena of the Police Review Board. However, the city was not required to produce any documents that were protected by law.

While the bureau of police has produced numerous documents, it has not produced 309 pages of un-redacted police reports. For the first time in this litigation, it contends that under a state law—the Criminal History Record Information Act (CHRIA) (18 Pa.C.S. §9101 et seq.)—the Pittsburgh Bureau of Police is prohibited from furnishing these reports to any noncriminal justice agencies—the law permits dissemination only to other criminal justice agencies.

The CHRIA governs the dissemination of information by criminal justice agencies. It creates three categories of information and establishes different rules for the dissemination of this information.

The first category created by the CHRIA covers court dockets, police blotters, and press releases, which under

the provisions of the CHRIA shall be considered public records. Section 9104.

The second category is *criminal history record information* which is defined in section 9102 as information collected by criminal justice agencies concerning individuals and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, information, or other formal criminal charges and any disposition arising therefrom.[3] The section 9102 definition explicitly provides that criminal history record information does not include intelligence, investigative, or treatment information, or information outside the scope of the Act as provided for in section 9104.

The third category consists of investigative, intelligence, and treatment information. These terms are defined in section 9102 as follows: *Intelligence information* is information "concerning the habits, practices, characteristics, possessions, associations or financial status of any individual compiled in an effort to anticipate, prevent, monitor, investigate, or prosecute criminal activity." *Investigative information* is information "assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." *Treatment information* is information "concerning medical, psychiatric, psychological or other rehabilitative treatment provided, suggested or prescribed for any individual charged with or convicted of a crime."

---

3. Under section 9121, criminal history record information may be disseminated to noncriminal justice agencies and individuals.

At an August 26, 2010 argument, counsel for the Police Review Board stated that it does not contest the statement of the City of Pittsburgh that the only information which it has not provided is intelligence, investigative, or treatment information as defined in section 9102, and as governed by section 9106(c) of the CHRIA. Subsection 9106(c)(4) provides that investigative and treatment information may be disseminated only to a criminal justice agency which requests information in connection with its duties:

"*Investigative and treatment information shall not be disseminated to any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency* which requests the information in connection with its duties, and the request is based upon a name, fingerprints, modus operandi, genetic typing, voice print or other identifying characteristic." (emphasis added)

Additional requirements and restrictions are imposed for disseminating intelligence information. One restriction is that the entity requesting the information be a criminal justice agency. Section 9106(c)(1)(ii).

The CHRIA distinguishes between criminal justice agencies and noncriminal justice agencies. See *e.g.,* section 9121. The definition of a *criminal justice agency* in section 9102 does not include a police review board.

Since the Police Review Board is not a criminal justice agency, section 9106 clearly provides that the Pittsburgh Bureau of Police may not disseminate intelligence, investigative, and treatment information to the Police Review Board. If the bureau of police were to do so,

under section 9106(g) of the CHRIA, the city would be subject to administrative remedies provided for in section 9181 and damage actions brought by persons aggrieved by violations of section 9106, including exemplary and punitive damages as provided for in section 9183.

The Police Review Board relies on my March 18, 2010 ruling that city council was authorized to enact an ordinance authorizing the Police Review Board to initiate investigations of incidents for which no complaint has been filed and to initiate studies and investigations and to make recommendations concerning police practices. However, in my March 18, 2010 opinion, I only addressed the issue of whether the bureau of police could refuse to turn over documents on the ground that the documents which were requested did not pertain to any incidents of alleged police misconduct for which a complaint had been filed with the Police Review Board. The city did not raise, and I did not consider, whether any of the records which the Police Review Board sought came within the provisions of section 9106 of the CHRIA.

The Police Review Board contends that the CHRIA does not apply to the City of Pittsburgh because Pittsburgh is a home rule municipality empowered to legislate over a wide range of local interests. The City of Pittsburgh correctly states that this argument is without merit because the Home Rule Charter Law through which the city became a home rule municipality specifically provides that state laws of general application apply to home rule municipalities The city relies on 53 Pa.C.S. §2961 and 53 Pa.C.S. §2962(c)(2). The former reads as follows:

"A municipality which has adopted a home rule charter may exercise any powers and perform any function

not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality."

And the latter provides:

"A municipality shall not: . . . Exercise powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth."

In this case, the city ordinance, as construed in my March 18, 2010 opinion, requires the Pittsburgh Bureau of Police to comply with a subpoena issued by the Police Review Board directing the production of intelligence, investigative, and treatment information. State law, on the other hand, prohibits the Pittsburgh Bureau of Police from furnishing this information to the Police Review Board. Thus, there is a direct conflict between the instructions of state law (the bureau may not furnish this information to a noncriminal justice agency) and local law (the bureau must turn over this information to a noncriminal justice agency).

Where there is a direct conflict, settled law holds that state law applies.

See *Huntley & Huntley Inc. v. Borough Council of the Borough of Oakmont,* 600 Pa. 207, 220, 964 A.2d 855, 862-63 (2009) (citation omitted) (footnote omitted):

"The preemption doctrine establishes a priority between potentially conflicting laws enacted by various levels of government. Under this doctrine, local legislation cannot permit what a state statute or regulation

forbids or prohibit what state enactments allow . . . .
Additionally, a local ordinance may not stand as an obstacle to the execution of the full purposes and objectives of the legislature."

Also see *Spahn v. Zoning Board of Adjustment,* 602 Pa. 83, 103, 977 A.2d 1132, 1144 (2009) (citations omitted):

"Thus, while the General Assembly cannot abrogate ordinances of purely local concern, the General Assembly may effectively abrogate local ordinances by enacting a conflicting statute concerning substantive matters of statewide concern . . . . Additionally, this court has explained that ordinances of purely local concern are those that affect the personnel and administration of the local government . . . . Stated differently, local ordinances enacted pursuant to the local charter are subordinate to the Home Rule Act when the matter at issue is one of statewide concern, and where the two conflict, the subordination mandate of the Home Rule Act takes precedence and controls."

The Police Review Board relies on case law which bars the General Assembly from enacting laws involving matters (1) that affect the personnel or administration of a local government, (2) that conflict with local ordinances, and (3) that do not have statewide application. The board correctly states that courts continue to look to *Addison case,* 385 Pa. 48, 55, 122 A.2d 272, 275 (1956), where the court stated:

"[I]t being abundantly clear that the limitations of power referred to in section 18 [of the Home Rule Act] concern only laws in relation to substantive matters of state-wide concern, such as the health, safety, security

and general welfare of all the inhabitants of the state, and not to matters affecting merely the *personnel* and *administration* of the offices local to Philadelphia and which are of no concern to citizens elsewhere. Any other conclusion would reduce the charter to a mere scrap of paper and make the much heralded grant of Philadelphia home rule an illusion and a nullity." See *e.g., Fraternal Order of Police v. City of Pittsburgh,* 165 Pa. Commw. 83, 644 A.2d 246 (1994).

The difficulty with the Police Review Board's reliance on *Addison* is that the CHRIA is not local legislation affecting merely the personnel and administration of the offices local to Pittsburgh and which is of no concern to citizens elsewhere. To the contrary, the CHRIA is an act of the legislature that is uniform and applicable in every part of the Commonwealth. It applies "to persons within this Commonwealth and to any agency of the Commonwealth or its political subdivisions which collects, maintains, disseminates or receives criminal history record information." 18 Pa.C.S. §9103. Its purpose is to balance the public's right to know with privacy rights of the citizens of this Commonwealth by describing what police records shall be made available to the public and which records shall be protected from dissemination to any entity other than another law enforcement agency.[4]

In *Spahn,* 602 Pa. 83, 977 A.2d 1132, *supra,* the Pennsylvania Supreme Court addressed the standing of taxpayers to take an appeal from a decision of the Zoning Board of Adjustment. Under the Philadelphia Code, taxpayers were given standing. Subsequently, the Gen-

---

4. The intelligence, investigative, and treatment information which the Police Review Board seeks will refer to persons who reside outside the City of Pittsburgh.

eral Assembly amended the First Class City Home Rule Act to permit only aggrieved persons (the definition of which did not include taxpayers) to appeal zoning decisions. The court did not apply the case law barring the General Assembly from enacting laws "affecting the personnel and administration of offices local to Philadelphia and which were of no concern to citizens elsewhere" (*Id.* at 104, 977 A.2d at 1145), because the question of who has standing to appeal to a court of record is a substantive matter of statewide concern implicating a question of access to the courts of the Commonwealth." *Id.* at 104, 977 A.2d at 1144.

The Police Review Board argues that this is not a law of statewide application because the city, as a home rule municipality, may balance its interests in overseeing the activities of the Pittsburgh Bureau of Police against the privacy interests that are protected by section 9106. This argument is without merit because a home rule municipality may not enact any legislation that interferes with provisions of state laws with statewide application. The legislature has determined that in order to adequately protect privacy interests of all the citizens of this Commonwealth, documents covered by section 9106 can be furnished only to criminal justice agencies. The argument of the Police Review Board, that these privacy interests are adequately protected because the Police Review Board will not disseminate to any third party records which the bureau of police provides, has been rejected through the provisions of the CHRIA which prohibit dissemination to any noncriminal justice agency.[5] A city

5. Under the enabling ordinance and the rules, regulations, and operating procedures adopted thereunder, the Police Review Board's files are confidential and not matters of public record. See City of Pittsburgh Code, title 6, art. VI §662.05(m).

ordinance may no more create an exception to section 9106's prohibition against dissemination because of the interests of the Police Review Board than the city could protect the interests of law enforcement officers by enacting an ordinance that barred disclosure of a category of documents that by state law are to be made available to the public.

The Police Review Board cites section 1983 actions brought in the federal courts in which the trial court required the production of police reports covered by section 9106 of the CHRIA. See *e.g., Curtis v. McHenry,* 172 F.R.D. 162 (W.D. Pa. 1997); *Griffin El v. Beard,* 2009 WL 1606891 (ED. Pa. 2009); and *D.N. and S.N. v. Snyder,* 2009 WL 1362665 (M.D. Pa. 2009). In these cases, the courts ruled that the state privilege does not apply in a federal question case pending in the federal courts. The rationale for these rulings is that if state statutory privileges were automatically entitled to recognition under Rule 501 of the Federal Rules of Evidence, the state could frustrate the ability to prove a section 1983 claim.

These cases offer no support to the Police Review Board. In litigation in state courts involving a state question, state law applies. Also, this litigation does not raise the issue of whether there are instances in which the Pennsylvania courts will require production of information protected by CHRIA in criminal proceedings, civil rights proceedings, and the like.

The Police Review Board states that prior to the present dispute, the Pittsburgh Bureau of Police has voluntarily disclosed investigative information to noncriminal justice agencies, including the Police Review Board. The Police Review Board refers to a letter of understanding between the acting director of the Citizens Police Review

Board and the city solicitor which provides that with limited exceptions, all documents produced by the City of Pittsburgh to the Police Review Board are officially designated confidential and may be reviewed only by the Police Review Board, its director, and authorized paid employees who agree to maintain this documentation in the strictest confidence. Police Review Board brief filed 8/21/10, ex. 1. However, doctrines of waiver or estoppel cannot affect the interests of third parties protected by section 9106.

In summary, the General Assembly has established a statewide statutory scheme governing the collection and dissemination of information of criminal justice agencies. Under the home rule legislation through which the City of Pittsburgh became a home rule municipality, the city may not alter the statewide statutory scheme through an ordinance, which provides for law enforcement agencies to disseminate information that cannot be disseminated under state law creating a comprehensive statewide statutory scheme.

For these reasons, I enter the following order of court:

ORDER

On September 23, 2010, it is hereby ordered that the request of the Pittsburgh Citizen Police Review Board that I compel the Pittsburgh Bureau of Police to furnish intelligence, investigative, and treatment information protected by section 9106 is denied.