IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tricia Mezzacappa                :
                                      :
     v.                    :  No. 1312 C.D. 2021
                                        :
Northampton County,         :
             Appellant     :  Submitted: August 5, 2022

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                           FILED: April 6, 2023

Northampton County (County) appeals from the decision of the Court of Common Pleas of Northampton County (Trial Court) affirming a final determination by the Office of Open Records (Open Records), which directed the County to comply with a request for records pursuant to the Right-to-Know Law (RTKL).[1] The request called for mug shots taken of two named persons allegedly detained at the Northampton County Prison (Prison). The County maintains that the records are exempt from release by the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101-9183, as well as the RTKL itself, and that the Trial Court failed to give proper consideration to the difficulties of fulfilling the request.

Patricia Mezzacappa (Requester) submitted her request for the two mug shots on November 9, 2020. Reproduced Record (R.R.) at 8a. Following a 30-day

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-.3104. One of Open Records' duties under the RTKL is to assign appeals officers to review, when challenged, decisions by local agencies in response to RTKL requests and issue orders and opinions on those challenges. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1027 n.1 (Pa. Cmwlth. 2011).

extension,[2] the County issued a denial of the request on December 15, 2020. *Id.* Requester then submitted a second RTKL request on December 28, 2020, asking for mug shots of *everyone* admitted to the Prison from October 1, 2020, until the date of the request. That request was also denied. *See Mezzacappa v. Northampton County* (Pa. Cmwlth., No. 1229 C.D. 2021, filed April 6, 2023) (*Mezzacappa II*).

Requester appealed from both denials separately, Open Records granted both appeals separately, and the County appealed from each determination separately to the Trial Court.[3] The Trial Court then affirmed Open Records' determinations with separate orders, and the matters have consequently reached this Court as separate cases. However, the underlying facts and legal issues are substantially the same. In *Mezzacappa II*, we held that the requested mug shots are not exempt from release under either CHRIA or the RTKL's own exceptions (provided in Section 708 of the RTKL, 65 P.S. § 67.708), and must therefore be released. For the reasons set forth in that opinion, we affirm the Trial Court's order.

 

_____
ELLEN CEISLER, Judge

---

[2] Under certain circumstances, Section 902(a)-(b) permits an agency to extend its response time to a RTK request by 30 days with written notice to the requester. 65 P.S. § 67.902(a)-(b).

[3] For reasons not made clear in the record, the appeal from the determination involving the later request was placed on the Trial Court's docket first.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tricia Mezzacappa              :
                                   :
      v.                     : No. 1312 C.D. 2021
                                   :
Northampton County,       :
            Appellant   :

# **O R D E R**

AND NOW, this 6th day of April, 2023, the order of the Court of Common Pleas of Northampton County in the above-captioned matter, dated October 26, 2021, is hereby AFFIRMED.

_____

ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tricia Mezzacappa      :
            :
   v.        :  No. 1312 C.D. 2021
            :
Northampton County,    :  Submitted: August 5, 2022
     Appellant  :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

DISSENTING OPINION
BY JUDGE McCULLOUGH       FILED: April 6, 2023


    Respectfully, I must dissent. The Criminal History Record Information Act's (CHRIA)[1] definition of "criminal history record information" includes "mug shots" because they are "identifiable descriptions." CHRIA prohibits dissemination of certain criminal history record information to "an individual or non-criminal justice agency." 18 Pa. C.S. § 9121. CHRIA defines "criminal history record information" in the following way:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of **identifiable descriptions,** dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and

---

[1] 18 Pa. C.S. §§ 9101-9183.

psychological information, or information and records specified in section 9104 (relating to scope).

18 Pa. C.S. § 9102 (emphasis added).

The Pennsylvania Attorney General has published an extensive CHRIA guide that outlines the policies and procedures. *See* Commonwealth of Pennsylvania Office of Attorney General, Criminal History Record Information Act Handbook (7th ed. 2013) (hereinafter "CHRIA Handbook"). The Attorney General's interpretation is "entitled to great weight." *McDowell v. Good Chevrolet-Cadillac, Inc.*, 154 A.2d 497 (Pa. 1959) (citing *Federal Deposit Ins. Corp. v. Board of Finance and Revenue*, 84 A.2d 495 (Pa. 1951)). Tellingly, the CHRIA Handbook notes that criminal history record information "**can be contained on** a 'rap sheet,' photograph '**mug shot**,' fingerprint cards, and reports," and notes that "[t]his is not a complete list but some of the more common places to find criminal history record information." *Id.* at 5 (emphasis added).

The Majority Opinion concludes that mugshots do not constitute "identifiable descriptions" because the word "description" is most often used in reference to written or spoken language. In my view, the Majority Opinion's interpretation is much too narrow and leads to unreasonable results. Pennsylvania's Statutory Construction Act of 1972 directs that a court should presume that the legislature did not intend a result that is "absurd, impossible of execution or unreasonable." 1 Pa. C.S. §§ 1922(1). In enacting CHRIA, the Pennsylvania legislature sought, *inter alia*, "to protect individual privacy and dignity." *See Taha v. Bucks County Pennsylvania*, No. 12-6867, 2014 WL 695205, at *8 (E.D. Pa. Feb. 21, 2014) (citing *In re Pittsburgh Citizen Police Review Board*, 16 Pa. D. & C. 5th 435, 445 (Pa. Com. Pl. 2010)). To protect a written description of an individual but not his photographic mugshot seems counterintuitive. Therefore, I believe that

interpreting CHRIA as including a written description but not a photograph is unreasonable. A person is identifiable by his photograph more easily than by his written description. The inclusion of a photograph within the term description has long been recognized in the law. As one Court noted, "[a] photograph is . . . a pictured description." *Ligon v. Allen*, 162 S.W. 536, 538 (Ky. Ct. App. 1914).

In *Taha v. Bucks County Pennsylvania*, 172 F. Supp. 3d 867, 871-72 (E.D. Pa. 2016), information regarding Daryoush Taha's 1998 arrest and incarceration was released to the public on Bucks County's Correctional Institution's Inmate Lookup Tool. The information included a color photograph of Taha from the shoulders up, wearing a blue shirt and pictured against a gray background; sex; date of birth; height; weight; race; hair color; eye color; citizenship; incarceration location; date committed to incarceration; release date; case number for the crime charged; and "DC, HARASS" listed under "Charge Information." *Id*. at 869. The District Court held that this information, including Taha's mugshot, was "undoubtedly information collected by a criminal justice agency, arising from the initiation of a criminal proceeding, and consisting of 'identifiable descriptions' and 'formal charges.' 18 Pa. C.S. § 9102." *Id*. at 872. Given the unambiguous definition in CHRIA, Pennsylvania's rules of statutory construction, relevant decisions by Pennsylvania courts, and the Attorney General's CHRIA Handbook, the District Court found that public dissemination of the aforementioned information constituted criminal record history information, which violated CHRIA. [2]

---

[2] A federal jury later found Bucks County's conduct to be willful and in reckless disregard and indifference to the inmates' privacy rights, and awarded $1,000 in damages to each of the 67,000 inmates whose information was improperly disseminated on the website. The total jury award was $67 million.

The Majority Opinion attempts to distinguish *Taha* in a footnote on the grounds that here, the requester is only seeking mugshots, whereas the information released in *Taha* included more information. However, CHRIA does not only forbid release of identifiable descriptions when it is accompanied by other information. CHRIA's language is plain; the presence of **any** of the enumerated data identifies the material as criminal history record information. *Taha*, 172 F. Supp. 3d at 870 (rejecting county defendants' argument that all of the listed items are necessary to qualify the material as criminal history record information).

I also do not agree with the Majority Opinion's conclusion that CHRIA does not bar the County's dissemination of the mugshots. CHRIA penalizes criminal justice agencies[3] for conduct such as illegally releasing criminal history record

[3] Criminal justice agency is defined as:

> **Criminal justice agency**. Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. **Criminal justice agencies include**, but are not limited to: organized State and municipal police departments, local detention facilities, **county, regional and State correctional facilities**, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.

18 Pa. C.S. § 9102 (emphasis added).

In addition, CHRIA applies to "to persons within this Commonwealth **and to any agency of the Commonwealth or its political subdivisions** which collects, maintains,

PAM - 4

information or releasing erroneous criminal history record information because such disclosures could harm a person's reputation. *King v. Mansfield University of Pennsylvania*, No. 1:15-CV-00159, 2016 WL 6525177, at *6 (M.D. Pa. Nov. 3, 2016). In order for protected information to be disseminated to a requesting agency, CHRIA requires that the agency adopt technical and physical safeguards including an audit trail for collecting, maintaining, tracking, and disseminating the information. The agency must label the information to indicate the level of sensitivity and confidence. 18 Pa. C.S. § 9106. What this means to me is that this information cannot be disseminated outside of the confines and protections of CHRIA. Secondary dissemination is prohibited. 18 Pa. C.S. § 9106(d). In other words, **only** criminal justice agencies may request, receive, and disseminate such protected information under very strict regulations.

Lastly, CHRIA penalizes agencies and political subdivisions for releasing criminal history record information because such disclosures could harm a person's reputation. 18 Pa. C.S. § 9106(g). *See Taha*, *King*. Even if the Majority Opinion is correct, we must remand for the balancing test espoused by our Supreme Court in *Pennsylvania State Education Association v. Department of Community and Economic Development (Office of Open Records)*, 148 A.3d 142, 158 (Pa. 2016), so that the affected third parties (especially those who have been exonerated or who are innocent) can make the argument that their privacy interests far outweigh the minimal public interest in disclosure of the mugshots. The core purpose of the RTKL is to ensure transparency and the public understanding of the operations or activities of the government. I can discern no particular public purpose or interest that will be furthered by the wholesale dissemination of 800 mugshots. Neither

___

disseminates or receives criminal history record information." 18 Pa. C.S. § 9103 (emphasis added).

could the Eleventh Circuit Court of Appeals in *Karantsalis v. United States Department of Justice*, 635 F.3d 497, 504 (11th Cir. 2011), which found that the subject had a substantial privacy interest in his mugshot, which was being sought by a reporters' committee. In describing this privacy interest, the *Karantsalis* Court stated:

> a booking photograph is a unique and powerful type of photograph that raises personal privacy interests distinct from normal photographs. A booking photograph is a vivid symbol of criminal accusation, which, when released to the public, intimates, and is often equated with, guilt. Further, a booking photograph captures the subject in the vulnerable and embarrassing moments immediately after being accused, taken into custody, and deprived of most liberties. . . This Court cannot identify any particular public interest that would be served by releasing the booking photographs.

635 F.3d at 504.

For these reasons, I respectfully dissent and would, instead, reverse the trial court in this case.

_____
PATRICIA A. McCULLOUGH, Judge