**In re Appointment of DISTRICT ATTORNEY.**

**Appeal of Board of Elections of Lackawanna County and County Commissioners of Lackawanna County.**

Commonwealth Court of Pennsylvania.

Argued March 8, 2000.

Decided July 17, 2000.

As Amended July 20, 2000.

---

Joseph A. O'Brien, Scranton, for appellants.

Brian J. Cali, Dunmore, for appellee, Lackawanna County Republican Party.

Bradley K. Moss, Philadelphia, for appellee, Andrew Jarbola.

Before DOYLE, President Judge, COLINS, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FLAHERTY, J., and LEADBETTER, J.

McGINLEY, Judge.

The Lackawanna County Commissioners (Commissioners) and the Lackawanna County Board of Elections (Board of Elections) seek review of the appointment of Andrew J. Jarbola, Esquire (Jarbola) as district attorney by the Court of Common Pleas of Lackawanna County (common pleas court) for the remainder of the term of the former district attorney, Michael J. Barrasse, Esquire (Barrasse), which expires on December 31, 2001.

On November 2, 1999, Barrasse, Lackawanna County's district attorney, was elected to the common pleas court. On January 3, 2000, Barrasse resigned as district attorney and assumed the office of Judge. In accordance with Section 206(b) of the Lackawanna County Home Rule Charter (Lackawanna Charter), the Lackawanna County Republican Party (Republican Party) submitted a list of three individuals to the common pleas court to fill

the vacancy in the office of district attorney. 335 Pa.Code § 1.2–206(b). On January 11, 2000, the Commissioners scheduled a special election for April 4, 2000[1] to fill the vacancy.

On January 18, 2000, the common pleas court appointed Jarbola as district attorney for the remainder of Barrasse's term, which expires on December 31, 2001. On January 18, 2000, the Republican Party requested an injunction and declaratory relief against the Commissioners and the Board of Elections. In particular, the Republican Party requested the common pleas court to enjoin the Board of Elections from holding a special election on April 4, 2000, and thereby avoid any violation of the Pennsylvania County Code[2] and the Pennsylvania Election Code.[3]

On January 25, 2000, the Commissioners and the Board of Elections appealed to the Commonwealth Court the January 18, 2000, appointment and challenged Jarbola's appointed term. The Commissioners and the Board of Elections received an expedited argument before the Court en banc. On February 14, 2000, the Commissioners and the Board of Elections rescheduled the special election for November 2, 2000,[4] during the general election.[5]

■ On appeal,[6] the Commissioners and the Board of Elections contend that the common pleas court lacked the authority to appoint Jarbola for the remainder of Barrasse's term,[7] pursuant to Section 1404 of the County Code (Section 1404), 16 P.S. § 1404.

Our analysis begins with the statutory framework set forth at Section 1404:

> If any vacancy shall occur in the office of district attorney, either by death, resignation, removal from office or from the county, or otherwise, the *judges of the court of common pleas* shall supply such vacancy by the appointment of a competent person to fill the office during the balance of the unexpired term. (emphasis added).

16 P.S. § 1404. In addition, Section 602 of the Election Code mandates that county officers[8] be elected at municipal elections held in odd-numbered years. 25 P.S. § 2752.

These statutory provisions directly conflict with Sections 206(b) and (c) of the Lackawanna Charter which provide:

> (b) If a vacancy occurs, the executive committee of the political party of the person elected to the office in question shall submit a list of three persons to the judges of the court and bank [sic] within five (5) days of the vacancy. The court shall appoint one of the three (3) persons recommended to temporarily fill the vacancy.

1. The date of the special election coincided with the date of the primary election already scheduled for April 4, 2000.

2. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 101 to 2902.

3. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600 to 3591.

4. The Commissioners and the Board of Elections delayed the special election because the April 4, 2000 date was less than a month from the March 8, 2000 en banc argument before the Commonwealth Court.

5. Lastly, the Commonwealth Court granted the Lackawanna County Democratic Party's application for leave to intervene. We note that the intervenor filed a brief in support of the appeal by the Board of Elections and argued that the home rule charter supersedes the Pennsylvania County Code, that a special election will not violate the Pennsylvania Constitution, and that the special election provisions are not prohibited by the Pennsylvania Election Code.

6. This Court's review is limited to a determination of whether the trial court committed legal error and whether the findings were supported by the evidence. *In re McElhatton,* 729 A.2d 163 (Pa.Cmwlth.1999).

7. This appeal challenges only the **term** for which Jarbola was appointed.

8. Article IX, Section 4 of the Pennsylvania Constitution lists a district attorney as a county officer.

(c) A special election according to the Laws of the Commonwealth of Pennsylvania shall be held at the next primary municipal or general election to permanently fill the vacancy.

335 Pa.Code § 1.2–206(b) and (c).[9]

The Commissioners and the Board of Elections contend that, despite the conflict, the Lackawanna Charter supersedes state law. The Commissioners and the Board of Elections assert that the General Assembly has not precluded a county from enacting a home rule charter at variance with state law.

However, the Pennsylvania Constitution is of paramount importance and must control. Pursuant to Article IX, Section 1 of the Pennsylvania Constitution, the general law pertaining to local government "shall be uniform as to all classes of local government regarding procedural matters." Article IX, Section 2 of the Pennsylvania Constitution provides that "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time."

The Home Rule Charter and Optional Plans Law, (HRC & OPL), 53 Pa.C.S. §§ 2901–3171, authorized counties to utilize home rule charters to establish a local government framework. Section 2962 of the HRC & OPL pertains to limitation of municipal powers. Specifically, a municipality is prohibited from exercising "powers contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable in every part of this Commonwealth." 53 Pa.C.S. § 2962(c)(2). Additionally, uniform statutes "applicable in every part of this Commonwealth shall remain in effect and shall not be changed.... Statutes shall supersede any municipal ordinance ... on the same subject." 53 Pa.C.S. § 2962(e).

Our Pennsylvania Supreme Court has treated the removal of a city employee as a municipal matter controlled by the charter. *In re Addison*, 385 Pa. 48, 122 A.2d 272 (1956). The Court reasoned that the administration of Philadelphia's civil service had no bearing upon Pennsylvania residents outside of the Philadelphia area. *In re Addison*, 385 Pa. at 56, 122 A.2d at 275. On the other hand, a statute may negate a home rule charter when the conflict involves a matter of statewide magnitude, such as the regulation of firearms. *Ortiz v. Commonwealth of Pennsylvania*, 545 Pa. 279, 681 A.2d 152 (1996).

In the present controversy, the Republican Party argues that the district attorney represents the Commonwealth's interests in criminal cases, and there must be uniformity throughout Pennsylvania regarding guidelines on how vacancies are filled for this elected position.

Our Pennsylvania Supreme Court addressed a similar issue in *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962). Therein, Richardson Dilworth (Dilworth) was elected mayor of Philadelphia in November 1959. Dilworth's four-year term began on the first Monday of January 1960, and was scheduled to end on the first Monday of January 1964. Dilworth resigned on February 12, 1962. Pursuant to the Philadelphia Home Rule Charter (PHRC) a vacancy in a mayor's unexpired term was to be filled during the next municipal or general election. As a result, the city solicitor suggested that a primary election be held in 1962 to nominate a candidate for the vacancy. Anita Cali and James Burns sought to enjoin the City of Philadelphia from conducting the primary and the Court of Common Pleas of Philadelphia County agreed. The question for the Pennsylvania Supreme Court

---

**9.** Although the Lackawanna Charter states that a vacancy is filled by the submission of three names, neither the County Code nor the Election Code promulgates any such procedure. Because this issue is not before us, we need not address it.

was whether the PHRC or the Election Code [10] controlled.

Our Supreme Court reasoned that the home rule charter must not violate "the Constitution of the United States, or the Constitution of Pennsylvania, or the Enabling Act of 1949, or the Election Code...." *Cali*, 406 Pa. at 306, 177 A.2d at 832. Additionally, our Supreme Court stated:

> It is unnecessary to decide whether the election of a Mayor of Philadelphia is of State-wide [sic] concern or purely a local matter which is of no concern to citizens of Pennsylvania at large. It will suffice to say that the Charter is subordinate to the Enabling Act, and if they conflict the

Enabling Act takes precedence and prevails.

*Id.* at 312, 177 A.2d at 835.

 Like in *Cali*, the County Code and the Election Code are of statewide importance. It is of no concern that the district attorney is a local county office which may or may not have powers of statewide impact.[11] The County Code and the Election Code take precedence over the Lackawanna Charter. We must conclude that the common pleas court had the authority to appoint Jarbola as district attorney for Barrasse's unexpired term.[12]

Accordingly, we affirm.

---

**10.** The Election Code provided that city officers must be elected at the municipal election in odd-numbered years.

**11.** We note that district attorneys are limited to geographical areas despite their performance of sovereign duties for state government. *Pennsylvania Gamefowl Breeders Association v. Commonwealth of Pennsylvania*, 122 Pa.Cmwlth. 52, 551 A.2d 361, 363 (1988). It is well-established that district attorneys are considered county officers for jurisdictional purposes and not Commonwealth officers. *Id.* (citing *Schroeck v. Pennsylvania State Police*, 26 Pa.Cmwlth. 41, 362 A.2d 486, 490 (1976)). Thus, this Court does not have original jurisdiction with respect to civil actions against district attorneys.

**12.** The dissent raises the following issues: (1) Whether the prohibitions in Section 2962 of the HRC & OPL, limiting the power of the home rule community, are inapplicable. (2) Whether the type of home rule charter adopted was unspecified by the parties or the common pleas court. As to the first issue, because the County Code does not apply to counties of the first class or second class under Section 102 of the County Code, 16 P.S. § 102, the dissent asserts that Section 1404 is inapplicable throughout the Commonwealth. However, with respect to Pennsylvania's first class county, all Philadelphia county officers were abolished by Article IX, Section 13(a) of the Pennsylvania Constitution. Moreover, the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. § 4404, reflects identical language to that of Section 1404. The dissent argues a distinction without a difference. We must reiterate and emphasize that the County Code, although not applicable in every part of the Commonwealth, applies specifically to Lackawanna County, a fourth class county. *See* 114 The Pennsylvania Manual § 6–12 (1999) and Section 210(4) of the County Code. When a vacancy occurs there must be uniformity throughout the Commonwealth in filling the vacancy. Section 1404 provides that uniformity and mandates that a vacancy in the district attorney's office is to be filled for the unexpired term by the judges of the court of common pleas. With respect to the dissent's generalization that the majority jeopardizes other home rule charters, this decision simply recognizes that statutes of statewide concern prevail if there is a conflict, and at the same time, recognizes a municipality's authority to conduct local affairs. This Court's decision in no way prevents a local government from adopting and implementing a home rule charter, but where a conflict exists between powers granted, a local government, under an adopted form of home rule, is restrained from violating the Constitution, the Enabling Act or the Election Code. As to the second issue, the dissent recognizes two types of home rule charters, i.e. one suggested by the government study commission or an optional prepackaged form of home rule charter. If Lackawanna County adopted the latter plan, then the dissent agrees that the common pleas court was authorized to fill the vacancy in the district attorney's office, but for different reasons than the majority. It is noteworthy that this issue was not raised previously. Issues not preserved below "are waived and cannot be raised for the first time on appeal." Pa. R.A.P. No. 302(a). Assuming arguendo, that this issue regarding the type of charter was properly raised, the argument is meritless because, whether the charter is "hand-crafted" or an optional plan, its provisions may not supersede constitutional provisions or statutes of statewide magnitude.

## ORDER

AND NOW, this 17th day of July, 2000, the order of the Court of Common Pleas of Lackawanna County in the above-captioned matter is affirmed.

LEADBETTER, Judge, concurring.

I concur in the result reached by the majority and its analysis of the merits in this case. I write separately because I believe that the administrative order entered by the court of common pleas may not be reviewed in our appellate jurisdiction. The order appealed here serves not to adjudicate questions of fact or issues of law, but instead directs the appointment of Andrew Jarbola to fill the vacancy in the office of district attorney. Since there were no adversary proceedings below, the legal issue which appellants seek to raise here cannot have been brought to the attention of the common pleas court, let alone addressed by it.

Even a cursory examination of the rules of appellate procedure reflects numerous provisions inconsistent with the concept of direct review of non-adjudicatory, administrative orders.[1] More fundamentally, the essence of appellate review is the examination of the record below in order to evaluate claims of error. Where there have been no proceedings of record below, no fact-finding and no opinion in support of the order, it will be impossible in most cases to undertake meaningful review. In-deed, as the majority notes at footnote 6, "This court's review is limited to a determination of whether the trial court committed legal error and whether the findings were supported by the evidence." This scope of review makes no sense whatever when we are asked to review an order confirming a discretionary appointment.[2]

Simply put, we are being asked to review the action of the court of common pleas not in the manner that appellate courts review trial court decisions, but in the manner that courts review the actions of parties before them—by making a de novo determination whether the action violated some legal right of appellant. This exercise ordinarily involves both fact-finding and application of law to the facts. For this reason, I believe that challenges to administrative orders can properly be addressed only in proceedings under our original jurisdiction[3], in which the parties will be clearly defined and necessary factual determinations can be made.

That being said, however, we are presented here solely with an issue of law ripe for our disposition. All interested persons have appeared before this court. The case is highly time-sensitive, and of obvious public importance. I believe it is appropriate under these unique circumstances to treat this matter as though it had been filed as an action for declaratory judgment in our original jurisdiction. Accordingly, I would do so and would decide the question of law in accordance with the majority.

1. For instance, Pa. R.A.P.1921 contemplates the composition of the record on appeal from a lower court and states that "[t]he original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases." Rule 1925 requires "the judge who entered the order appealed from ... shall forthwith file ... an opinion, of the reasons for the order." Pa. R.A.P.1925. Rule 908 provides that parties in the trial court are the parties on appeal. Finally, Rule 302(a) mandates that issues not raised in the trial court may not be raised for the first time on appeal.

2. Moreover, where there have been no parties below, the appellants will necessarily have been non-parties, and unless some other non-party moves to intervene, there will be no appellees, or else the appellees will be whomever the appellant chooses to serve with his notice. This will frequently pose significant problems in ascertaining both that those who appear have the requisite standing and also that all-real parties in interest are represented before the appellate court.

3. See 42 Pa.C.S. § 761. Where appropriate, an original action could also be filed in the Pennsylvania Supreme Court pursuant to 42 Pa.C.S. § 721, or pursuant to that court's King's Bench powers.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. I disagree with the majority that home rule charter communities are not free to change the method of filling a vacant elected office contained in a particular municipal or county code that governed the particular municipality or county before it adopted home rule. To so hold is at variance with Article IX of the Pennsylvania Constitution granting home rule to local governments as well as its implementing legislation, the Home Rule and Optional Plans Law (Home Rule Law).[1] Moreover, under the majority's rationale, most home rule charters will become illegal because most have provisions that are at odds with various provisions contained in the county or city code governing their affairs prior to adopting home rule – including those that changed to a county executive-council form of government. Having said all that, though, the majority's outcome may, nonetheless, be correct depending on the type of charter Lackawanna County adopted.

In 1977, Lackawanna County, a county of the third class,[2] adopted a home rule charter pursuant to the provisions of the Home Rule Law. Section 206 of the Lackawanna County Home Rule Charter[3] dealt with the filling of vacancies for any elected office. This provision provided, among other things, that:

(a) The office of any elected officer shall become vacant upon death, resignation, removal, forfeiture, failure to assume such office after election thereto within forty-five (45) days after scheduled commencement of the term thereof or men-

tal disability to perform the duties of the office.

(b) If a vacancy occurs, the executive committee of the political party of the person elected to the office in question shall submit to the judges of the court en banc within five (5) days of the vacancy. The court shall appoint one of the three (3) recommended to temporarily fill the vacancy.

(c) A special election according to the Laws of the Commonwealth of Pennsylvania shall be held at the next primary municipal or general election to permanently fill the vacancy.

On January 3, 2000, the Lackawanna County District Attorney, Michael J. Barrasse (Barrasse), resigned from his position to assume the office of judge of the court of common pleas. In accordance with its home rule charter, the Lackawanna County Republican Party submitted to the trial court three names of individuals to fill the vacancy. The Lackawanna County Commissioners (Commissioners) scheduled a special election for April 4, 2000, to fill the vacancy. On January 18, 2000, the trial court appointed Andrew J. Jarbola (Jarbola) to fill the vacancy and act as district attorney for the remainder of Barrasse's term which expires on December 31, 2001. The Commissioners and the Board of Elections appealed Jarbola's appointment by the court of common pleas as well as challenged the appointment for the entire unexpired term.

The majority finds that the trial court acted properly in appointing Jarbola as district attorney for the remainder of the unexpired term because Section 602 of the Election Code, 25 P.S. § 2752,[4] as well as

1. 53 Pa.C.S. §§ 2901–3171.

2. The 1999 Pennsylvania Manual denominates Lackawanna County as a county of the third class.

3. 335 Pa.Code § 1.2–206.

4. Act of June 3, 1937, P.L. 1333, 25 P.S. § 2752. Section 602 of the Election Code provides:

The municipal election shall be held biennially on the Tuesday next following the first Monday of November in each odd-numbered year. All judges of courts of record of the various judicial districts and counties, and all counties, city, borough, township, ward, school district, poor district and election officers shall be elected at the municipal election. Judges may be elected at the municipal election.

Section 1404 of the County Code, 16 P.S. § 1404,[5] precludes Lackawanna County voters from adopting a method of replacing municipal officers from appointive to elective. Because Section 1404 of the County Code requires the common pleas court to appoint a district attorney for the entire unexpired term, the majority affirms the trial court. I disagree with the majority because I do not believe that all home rule charter communities are not necessarily bound by their underlying municipal or county codes and are not bound to hold elections to fill vacancies in municipal election years.

## I.

### A.

While at first blush it appears to be controlling, I believe the majority's reliance on *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962), for its holding that a home rule county charter cannot

**5.** Act of August 9, 1955, P.L. 323, 16 P.S. § 1404. That section provides:

If any vacancy shall occur in the office of district attorney, either by death, resignation, removal from office or from the county, or otherwise, the judges of the court of common pleas shall supply such vacancy by the appointment of a competent person to fill the office during the balance of the unexpired term.

**6.** Section 18 of the First Class City Home Rule Act provides:

No city shall exercise any powers or authority beyond the city limits except such as are conferred by an act of the General Assembly, and no city shall engage in any proprietary or private business except as authorized by the General Assembly. Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are—
 (a) Applicable to a class or classes of cities on the following subjects:
 (1) Providing for the filing and collection of municipal and tax claims or liens and for the sale of real or personal property in satisfaction thereof;
 (2) Providing for the exercise of the power of eminent domain and the proce-

change the method of filling a vacancy in the office of district attorney, is misplaced. In *Cali*, the office of mayor of Philadelphia became vacant and the question was when the election was to be held to fill the vacancy—in the next general or municipal election, whichever came first, as provided in the then-recently adopted Philadelphia Home Rule Charter or only at the next municipal election as provided for in Section 602 of the Election Code, one of the provisions at issue here. Finding that Section 18 of the First Class City Home Rule Act, 53 P.S. § 13133,[6] prohibits a provision in a charter that is at variance with statutes "applicable in every part of the Commonwealth," and because Section 602 of the Election Code was applicable in every part of the Commonwealth and provided that municipal elections be held in odd years, our Supreme Court determined that all elections to fill vacancies could not take place in even-numbered years.[7]

dure for the condemnation of property for public purposes;
 (3) Providing for the assessment of damages and benefits for property taken, injured or destroyed;
 (4) Providing methods for the incurring or increasing of indebtedness;
 (5) Providing for the annexation or exclusion or detachment of territory;
 (6) Regulating public schools;
 (7) Providing for the personal registration of electors;
 (8) Limiting rates and fixing subjects of taxation;
 (9) Providing for the assessment of real or personal property and persons for taxation purposes.
 (b) Applicable in every part of the Commonwealth.
 (c) Applicable to all the cities of the Commonwealth, including, but not limited to, those acts providing for the disability compensation of police officers and firefighters. 53 P.S. § 13133.

**7.** There was also a challenge in *Cali* that Article VIII, Section 3, now renumbered as Article VII, Section 3, of the Pennsylvania Constitution precluded the filing of a vacancy at a non-municipal election. This provision in relevant part provided:

All elections for judges of the courts for the several judicial districts, and for county,

However, the Supreme Court's holding in *Cali* is not controlling because it involved a different home rule enabling act and a different home rule constitutional provision. The Philadelphia Home Rule Charter was enacted pursuant to the now repealed 1922 Amendment to Article XV, Section 1 of the Constitution of 1874,[8] as well as the specific limitations of powers contained in the First Class City Home Rule Act that, while similar to the ones here, are different in material aspects.

A new start in home rule in Pennsylvania occurred as a result of the Constitutional Convention of 1968. It proposed, and the voters adopted, Article 9, Section 2 of the Pennsylvania Constitution.[9] Unlike the 1922 Amendment which only gave home rule to cities at the discretion of the General Assembly, Article 9, Section 2 mandated that home rule be implemented in Pennsylvania for all local government. The impetus for this provision was that the

manner in which cities were governed at the local level should be determined at the local level, *albeit* with some restrictions. As required by this provision of the Pennsylvania Constitution, the General Assembly implemented home rule by the enactment of the Home Rule Law, a completely different Act than the First Class Home Rule Act at issue in *Cali*. Unlike Section 13 of the First Class Home Rule City Act, the limitation of powers section in the Home Rule Law has a provision specifically dealing with what local home rule communities are proscribed from doing in the area of elections. That provision provides that home rule communities have no power or authority regarding "[t]he registration of electors and the conduct of elections." 53 Pa.C.S. § 2962(c)(5).

I would interpret this provision to mean that home rule communities cannot deal only with how the election is "conducted." [10] Implicitly, this provision recognizes

city, ward, borough, and township officers, for regular terms of service, shall be held on the municipal election day; namely, the Tuesday next following the first Monday of November in each odd-numbered year, but the General Assembly may by law fix a different day, two-thirds of all the members of each House consenting thereto: Provided, That such elections shall be held in an odd-numbered year

Section 602 of the Election Code appears to merely implement this provision of the Constitution; yet our Supreme Court in *Cali* held that this constitutional requirement that all city officers must be elected for regular terms of service at municipal election in an odd-numbered year only governed for regular terms of service and did not cover special elections to fill a vacancy.

8. The 1922 Amendment to Article XV, Section 1 of the Constitution of 1874 provided:

Cities or cities of any particular class may be given the right and power to adopt their local charters and to exercise the powers and authorities of local self-governments, subject however, to such restrictions, limitations and regulations as may be imposed by the legislation.

9. Home rule in Philadelphia was granted pursuant to a 1922 Amendment to Article 9, Section 2 of the Pennsylvania Constitution provides:

Municipalities shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors. If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter may be presented to the electors by initiative or by the governing body of the municipality. A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

10. Article VII, Section 6 of the Pennsylvania Constitution entitled "Election and registration laws" deals with the conduct of elections and provides:

All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State, except that laws regulating and requiring the registration of electors may be enacted to apply to cities only: Provided, That such laws be uniform for cities of the same class, and except further, that the General Assembly shall, by general law, permit the use of voting machines, or other

that nothing prohibits home rule communities from scheduling elections for vacancies as they see fit. This interpretation is confirmed by Article IX, § 4 of the Pennsylvania Constitution that provides home rule counties can fill vacancies in a manner different than previously provided. *See* I. B., *infra*. To hold otherwise would mean that local home rule communities could not go from an appointive system of filling those vacancies to an elected system because an office would then be vacant for years, a result at variance with the whole idea of home rule—to let individual communities decide on how they are going to be governed.

### B.

Having more serious ramifications, though, is the majority's reliance on Section 1404 of the County Code as prohibiting an alternative method of electing to fill a vacancy rather than having judges make the appointment. When the General Assembly enacted Section 2961 of the Home Rule Law, 53 Pa.C.S. § 2961, it gave home rule charter communities the broadest powers and specifically required the presumption that those communities had the power to undertake the action they desired to take, and unless it was specifically denied, the action should be upheld. 53 Pa. C.S. § 2961 provides:

A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, *shall be liberally construed in favor of the municipality.*[11] (Emphasis added).

*See also Fraternal Order of Police, Fort Pitt Lodge No. 1 v. City of Pittsburgh,* 165 Pa.Cmwlth. 83, 644 A.2d 246 (1994), *petition for allowance of appeal denied,* 544 Pa. 637, 675 A.2d 1253 (1996).

However, while the General Assembly wanted the powers it granted in the Home Rule Law to be liberally construed in favor of the municipality, in Section 2962 of the Home Rule Law, 53 Pa.C.S. § 2962, it sets forth the "powers denied" to local governments when enacting their home rule charters or implementing ordinances. The "powers denied" at issue here are those contained in subsection (c)(2) that prohibit a home rule community from exercising "powers contrary to or in limitation ... of powers granted by statutes **which are applicable in every part of this Commonwealth,**" and in subsection (e) which provides that "**statutes that are uniform and applicable in every part of this Commonwealth** shall remain in effect and shall not be changed ... Statutes shall supersede any municipal ordinance ... on the same subject." 53 Pa.C.S. § 2962(e). (Emphasis added).

The majority appears to interpret those provisions to mean that a provision con-

---

mechanical devices for registering or recording and computing the vote, at all elections or primaries, in any county, city, borough, incorporated town or township of the Commonwealth, at the option of the electors of such county, city, borough, incorporated town or township, without being obliged to require the use of such voting machines or mechanical devices in any other county, city, borough, incorporated town or township, under such regulations with reference thereto as the General Assembly may from time to time prescribe. The General Assembly may, from time to time, prescribe the number and duties of election officers in any political subdivision of the

Commonwealth in which voting machines or other mechanical devices authorized by this section may be used.

Presumably, this prohibition in the Home Rule and Optional Plans Law did so to make sure that home rule cites did not change election laws applicable to only their class of cities.

11. The provisions for county home rule seem to have been "tacked-on" to the Home Rule Law, and where the term municipality is used in a general sense, that term generally applies also to counties.

tained in a county or city code that was applicable to the particular class of county (or, for that matter, a particular class of city), e.g., county of the second class, that governed the operation of that county prior to the adoption of home rule, is a matter of "statewide importance." Because a law affecting a class or classes of counties is of "statewide importance," it holds that any home rule charter provision at variance with one of the applicable codes is illegal under Section 2962 of the Home Rule Law. Accordingly, it holds that because Section 1404 of the County Code, 16 P.S. § 1404, provides that the common pleas court is to fill the vacancy for the entire unexpired term, Section 206 of the Lackawanna Home Rule Charter must be struck down because it is at variance with the County Code.

While what happens in any county is of "statewide importance," because all of our counties and municipalities are joined for the Commonwealth, the Home Rule Law provides in no uncertain terms for something very different: as long as a law is not applicable everywhere, nothing prohibits a home rule charter from varying the terms of that law. In this case, while named the County Code, it is not applicable in "every part of the Commonwealth." Section 102 of the County Code, 16 P.S. § 102, specifies that the County Code, including Section 1404, does not apply to counties of the first or second class. In effect, it is a code for counties of the second class A through eighth class. Because Section 1404 is not applicable "in every part of the Commonwealth," to change the method of filling the county vacancy in the Lackawanna County Home Rule Charter from a board of judges to an

election is permissible, and Section 206 of the Lackawanna Home Rule Charter does not violate Section 2962 of the Home Rule Law. *Fraternal Order of Police, Fort Pitt Lodge No. 1.*[12]

Not only does the Home Rule Law allow the filling of the vacancy in the office of district attorney by election, so does Article IX, § 4 of the Pennsylvania Constitution entitled "County government" which provides:

County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law.

County officers, except for public defenders who shall be appointed as shall be provided by law, shall be elected at the municipal elections and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; *all vacancies shall be filled in such a manner as may be provided by law.*

County officers shall be paid only by salary as provided by law for services performed for the county or any other governmental unit. Fees incidental to the conduct of any county office shall be payable directly to the county or the Commonwealth, or as otherwise provided by law.

Three county commissioners shall be elected in each county. In the election of these officers each qualified elector shall vote for no more than two persons,

---

**12.** In *Delaware County v. Middletown Township,* 511 Pa. 66, 511 A.2d 811, 813 (1986), our Supreme Court held that "the adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. Whereas, previously, the law held that municipalities were merely agencies instituted by the sovereign and exercising only those powers specif-ically granted to them, *see, e.g., Philadelphia v. Fox,* 64 Pa. 169 (1870), under the present Constitution and implementing legislation, '[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.' Pa. Const. Art. 9, § 2. *See also* 53 P.S. § [2952]."

and the three persons receiving the highest number of votes shall be elected. *Provisions for county government in this section shall apply to every county **except** a county which has adopted a home rule charter or an optional form of government. One of the optional forms of county government provided by law shall include the provisions of this section.* (Emphasis added).

As can be seen, this Article provides that all vacancies shall be filled in such a manner as may be provided by law, but then goes on to provide that this and other provisions of the Constitution shall not apply to counties which have adopted home rule charters or optional plans. Because the Constitution makes the filling of vacancies "in a matter provided by law" such as Section 1404 of the County Code not applicable to home rule counties, it is obvious that the Constitution recognized that if it was not a "power denied" by the General Assembly in the Home Rule Law, home rule counties could provide for the manner in which a county office would be filled.

The net effect of the majority's holding is that most home rule county charters would, in some way, be infirm because most have provisions that are at variance with the County Code. For example, several counties, including Erie, Lehigh and Northampton, have adopted a council-mayor form of government.[13] Yet under the majority's rationale, this would be illegal because Section 401 of the County Code, 16 P.S. § 401, provides that in each county, there shall be three county commissioners, as well as what is known as other row officers, elected by the qualified electors of the county. While this is but one example,

most, if not all, home rule county or city charters have similar examples because one of the main reasons that cities and counties adopted home rule charters is to change their form of government and their method of operation set forth in those codes that previously governed them.

I would hold that nothing prohibits a home rule charter from containing a provision changing the method for filling an unexpired term different from that contained in Section 1404 of the County Code unless it was an optional plan county. Unfortunately, though, we do not know if Lackawanna is an optional plan county.

## II.

Prior to enacting a home rule charter,[14] a municipality or county has to present to the voters whether a Home Rule Government Study Commission should be formed, and if the electorate desires to do so, then to have the voters elect the members of that Commission—in effect, a local "constitutional" convention. The purpose of the Commission is to study and recommend to the voters whether the form of local government should remain the same or whether another form should be adopted. Under Section 2923 of the Home Rule Law, 53 Pa.C.S. § 2923, the Commission may recommend four options, but only two are relevant here: [15]

1) That a referendum shall be held to submit to the electors the question of adopting one of the optional plans of government authorized by this subpart to be specified by the commission.

thereon. The charter shall also provide for the composition and election of the governing body, which in all cases shall be chosen by popular elections.

---

13. *See* 325 Pa.Code, § 1–3.2 (Erie County); 339 Pa.Code, § 1.2–201 (Lehigh County); and 348 Pa.Code, § 1.3–301 (Northampton County).

14. Under Section 2902, 53 Pa.C.S. § 2902, "home rule charter" is defined as:

A written document defining the powers, structure, privileges, rights and duties of the municipal government and limitations

15. Under this provision, the Commission can also recommend that the form of government shall remain unchanged or recommend other action as it deems advisable consistent with its functions as set forth in the Act.

2) That a referendum shall be held to submit to the electors the question of adopting a home rule charter as prepared by the commission and as authorized by this subpart.

All of the parties and the common pleas court presented this case to this Court as if it did not matter which type of home rule charter was adopted, and that is the way the majority decided the case. However, whether the Government Study Commission recommended to the voters to adopt a home rule charter prepared by them or an optional plan may be controlling as to how the district attorney vacancy is to be filled and for what term.

The analysis set forth in Part I assumed that the Lackawanna County electorate adopted a home rule charter prepared by the Commission and recommended for adoption pursuant to Section 2963(2) of the Home Rule Law, 53 Pa.C.S. § 2963(2).[16] If, instead, Lackawanna County adopted, pursuant to Section 2923(1) of the Home Rule Law, 53 Pa.C.S. § 2923(1), the only county *optional* plan and the one required to be set forth as one of the optional plans by Article IX, Section 9 of the Pennsylvania Constitution, then I would agree that the trial court had the authority to appoint a district attorney to fill a vacancy, but for reasons other than those given by the majority.

The optional county plan is contained in subchapter F of chapter 30 of the Home Rule Law. Section 3091, 53 Pa.C.S. § 3091, provides that "the form of government provided in this subpart shall be known as the 'Optional County Plan' and shall, ... govern any county the voters of which have adopted this plan pursuant to this subpart." After enumerating the county officers, Section 3092(b), 53 Pa.C.S. § 3092(b), goes on to provide that:

County officers, except for public defenders, who shall be appointed as provided by law, shall be elected at the municipal election and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors are duly qualified. *Vacancies shall be filled in the manner provided by law.* (Emphasis added).

Under the optional home rule charter, the vacancies for county officers, including the district attorney, are to be filled "in the manner provided by law." Under Section 1404 of the County Code, the manner as provided by law is that the common pleas court is to fill the vacancy for the unexpired term. The only argument that would militate against this interpretation is that the "manner as provided by law" is construed to be a home rule charter provision such as contained in Section 206 of the Lackawanna County Home Rule Charter. However, Section 2971 of the Home Rule Law, 53 Pa.C.S. § 2971, provides that:

Upon the adoption by the electors of any of the optional plans of government as set forth in this subpart, the municipality shall thereafter be governed by the plan adopted and by the provisions of general law applicable to that class or classes of municipality except as otherwise provided in this subpart. Until the municipality adopts another form of government, the plan adopted and the provisions of general law applicable to that class or classes of municipality shall be law. All statutes affecting the organization, government and powers of the municipality which are not inconsistent or in conflict with this subpart shall remain in full force until modified or repealed.

Because the general law applicable to classes of counties remains in effect, then

---

16. The majority contends that this "issue" was not raised and thus waived. With due respect, this is not an "issue" but a fact needed to answer the issue raised by the parties. However, if the type of charter is an "issue," and because it is an "issue" not raised and cannot be reached, then the appointment order should be vacated because all the parties referenced provisions of the Home Rule Law dealing with "handcrafted charters." Because we are "adrift at sea" without this information, it is best to vacate and have the trial court make that determination.

pursuant to the County Code, a vacancy for the position of district attorney is to be filled for the remainder of the term by an appointment by the court of common pleas.

Nothing in the Lackawanna County Home Rule Charter sets forth whether Lackawanna County adopted an optional plan or home rule charter prepared by a Government Study Commission. At first glance, the home rule charter appears to be one that was drafted by the Charter Commission,[17] but when asked at oral argument, one of the parties stated that Lackawanna County was an optional plan county. Because it is not certain if Lackawanna County has adopted an optional plan or changed its "form of government" since its charter was initially adopted, I would vacate the trial court's order and, because of the participation of all the judges of the Court of Common Pleas of Lackawanna County in this matter, retain jurisdiction and hold a hearing to make such a determination.

Judge FLAHERTY joins in this dissenting opinion.

---

**17.** Not only does the Lackawanna County Home Rule Charter vary the method of filling vacancies but, among other things, the charter consolidates certain duties of the row offices required by Article IX, Section 4 of the Pennsylvania Constitution, as well as the optional plan contained in the Home Rule Law. In noting that 70 jurisdictions have adopted home rule charters including six counties, the 1999 Pennsylvania Manual lists Lackawanna County as having a home rule charter and not an optional plan.