**BOARD OF PROPERTY, ASSESS-MENT, APPEALS, REVIEW and REGISTRY OF ALLEGHENY COUNTY and Kenneth R. Behrend, Richard P. Odato, Rose Howard Liptak, Louis J. Sparvero, Michael J. Suley, Darin Sarin and Gene Scheck, all in their official capacities**

v.

**COUNTY OF ALLEGHENY, Allegheny County Council and the Allegheny County Chief Executive**

Appeal of Board of Property Assessment, Appeals and Review of Allegheny County.

**Board of Property, Assessment, Appeals, Review and Registry of Allegheny County and Kenneth R. Behrend, Rose Howard–Liptak, Louis J. Sparvero, Michael J. Suley, Darin Sarin and Gene Scheck, all in their official capacities**

v.

**County of Allegheny, Allegheny County Council and The Allegheny County, Chief Executive**

Appeal of Board of Property Assessment, Appeals and Review of Allegheny County.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2000.
Decided Feb. 8, 2001.

Ira Weiss, Pittsburgh, for appellant.

George M. Janocsko, Pittsburgh, for appellees.

Before DOYLE, President Judge, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

FRIEDMAN, Judge.

The Board of Property Assessment, Appeals and Review of Allegheny County (Board) has appealed from two August 9, 2000 orders of the Court of Common Pleas of Allegheny County (trial court). One of the orders states that the provisions of the Administrative Code of Allegheny County (Administrative Code) abolishing the Board do not violate the Pennsylvania Constitution, any state laws or the Allegheny County Home Rule Charter. The

second order states that the Board shall continue to assume responsibility for scheduling, hearing and deciding assessment appeals, excluding exemptions, through December 31, 2000. We affirm.

On June 27, 2000, with the enactment of County Ordinance No. 15, Allegheny County replaced the Board with three entities that will perform the various functions that are now performed by the Board pursuant to the Second Class County Assessment Law (Assessment Law).[1] The powers and duties of these entities are described in three new chapters of the Administrative Code: Chapter 205, Chapter 207 and Chapter 209.

Chapter 205 of the Administrative Code creates a Property Assessment Oversight Board (Oversight Board). The duties of the Oversight Board include: (1) making recommendations to County Council regarding assessment standards and practices; (2) confirming or rejecting the County Manager's appointment of the Chief Assessment Officer; and (3) certifying that assessments have been made in accordance with Allegheny County's Assessment Standards and Practices Ordinance. The members of the Oversight Board are: the President of County Council, or a designee; the Chief Executive, or a designee; and a person with at least ten years practical experience as a real estate broker appointed by the Chief Executive with the consent of County Council. (R.R. at 22a–23a.)

Chapter 207 of the Administrative Code abolishes the Board and creates a new seven-member Board of Property Assessment Appeals and Review (Appeal Board). The purpose of the Appeal Board is to oversee assessment appeals and to certify assessment appeal decisions. Its duties include the hearing of appeals. Appeal Board members serve staggered three-year terms and must meet certain qualifications.[2] County Council appoints four of the members, and the Chief Executive appoints the remaining three members with the consent of County Council. (R.R. at 24a–26a.)

Chapter 209 of the Administrative Code creates an Office of Property Assessments (Office) within the executive branch of the government. The duties of the Office include the making of all assessments and valuations of real property, and supervision of the same, and the making of initial recommendations to the Appeal Board concerning the tax-exempt status of real property.[3] The County Manager appoints a Chief Assessment Officer, with the consent of the Oversight Board, who reports to the County Manager. The Chief Assessment Officer must be an International Association of Assessing Officers (IAAO) Certified Assessment Evaluator (CAE), or hold the highest-ranking Commonwealth appraiser's license, and must have at least ten years of progressively responsible professional experience in the management of property valuation. (R.R. at 30a.)

On July 19, 2000, the Board filed a Complaint for Declaratory Judgment and Injunctive Relief (Complaint) in the trial court, asking the trial court to declare that

---

1. Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. §§ 5452.1–5452.20.

2. Three Appeal Board members must have at least ten years practical experience as a registered real estate broker, or real estate appraiser or assessor. One member must have at least ten years practical experience as a building construction engineer, civil engineer or general contractor or assessor, and one member must have at least ten years experience as a practicing attorney at law with residential valuation expertise. (R.R. at 24a.)

3. Chapter 209 requires that any person involved in determining real property values must, at a minimum, be a Certified Pennsylvania Evaluator. (R.R. at 30a.)

County Ordinance No. 15 violates state law. The Board argued before the trial court, *inter alia,* that County Ordinance No. 15 violates section 3107–C(h)(8) of the Second Class County Charter Law (Charter Law).[4] This section of the Charter Law states:

> (h) With respect to the following subjects, the charter shall not give any power or authority to the county contrary to or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable to counties of the second class:
>
> . . . .
>
> (8) The assessment of real or personal property and persons for taxation purposes.

16 P.S. § 6107–C(h)(8). The trial court, believing this language to be ambiguous, relied on *Lennox v. Clark,* 372 Pa. 355, 93 A.2d 834 (1953), *overruled on other grounds, Walsh v. Tate,* 444 Pa. 229, 282 A.2d 284 (1971), to ascertain the intention of the General Assembly. Based on *Lennox,* the trial court interpreted the section to mean that a home rule municipality may not enact legislation "concerning the manner in which assessments and valuations of property shall be made (i.e., how property is valued) as opposed to who values the property or hears assessment appeals." (Trial court op. at 13.) Thus, by order dated August 9, 2000, the trial court declared that County Ordinance No. 15 did not violate state law. On the same date, the trial court issued an order stating that the Board shall continue to assume respon-

sibility for scheduling, hearing and deciding assessment appeals, excluding exemptions, through December 31, 2000.[5] The Board then filed its appeal with this court.[6]

## I. Charter Law Ambiguity

The Board argues here that the trial court erred in concluding that the language of section 3107–C(h)(8) of the Charter Law is ambiguous. We disagree.

 Where the words of a statute are susceptible to more than one meaning, they are ambiguous. *See Allegheny Intermediate Unit # 3 Education Association v. Bethel Park School District,* 654 A.2d 192 (Pa.Cmwlth.1995), *aff'd,* 545 Pa. 78, 680 A.2d 827 (1996). Section 3107–C(h)(8) of the Charter Law states that a home rule charter shall not give any power or authority to a county that is contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly applicable to second class counties with respect to the "assessment of real or personal property and persons for taxation purposes." In the taxation context, the word "assessment" can mean: (1) "a valuation of property . . . for the purpose of taxation;" or (2) "the entire plan or scheme fixed upon for . . . taxing." Webster's Third New International Dictionary 131 (1993).

### A. Two Possible Meanings

The Board favors the second meaning, arguing that the language of section 3107–C(h)(8) clearly prohibits local governments from modifying, through their home rule

---

4. Act of July 28, 1953, P.L. 723, added by section 3 of the Act of May 20, 1997, P.L. 149, 16 P.S. § 6107–C(h)(8).

5. The Board filed an application for a stay pending appeal and a motion for post-trial relief and additional injunctive relief pending appeal, which the trial court denied.

6. The Board also filed an Application for Relief in the Nature of an Injunction Pending Appeal Pursuant to Pa. R.A.P. 1732(b). In a memorandum opinion filed on September 25, 2000, a single judge of this court denied the application.

charters, the "system" of making valuations of property for taxation purposes. (Board's brief at 8.) Thus, the Board believes that the word "assessment" refers to the "entire plan or scheme" for making assessments. We acknowledge that the Board's position represents one possible construction of the statutory provision.

However, as shown above, the word "assessment" also can mean "a valuation of property" for taxation purposes. In Pennsylvania, the "person responsible for the valuation of real property for ad valorem taxation purposes" is an "assessor." [7] All assessors in Pennsylvania are certified under the Assessors Certification Act and are given the title of Certified Pennsylvania Evaluator.[8] To become a Certified Pennsylvania Evaluator, an individual must complete a minimum of ninety hours of basic courses of study covering the appraisal assessing profession and successfully complete a comprehensive examination covering all phases of the appraisal process and the assessment function established by the assessment statutes of this Commonwealth.[9]

Given the fact that state law requires individuals who make valuations of real property for taxation purposes in counties throughout the Commonwealth to have special expertise, section 3107–C(h)(8) of the Charter Law could be read to prohibit second class counties from interfering with the professional valuation work done by Certified Pennsylvania Evaluators within such counties. Because this represents a second reasonable construction of section 3107–C(h)(8), we conclude, like the trial court, that the statutory language is ambiguous.

## B. Proper Meaning

■ Because the language of section 3107–C(h)(8) of the Charter Law is ambiguous, we must ascertain the intention of the General Assembly by applying appropriate rules of statutory construction. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(c). One such rule states that, in ascertaining the intention of the General Assembly, we presume that "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." Section 1922(4) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(4).

In 1953, in the *Lennox* case, our supreme court construed the language used in section 3107–C(h)(8) of the Charter Law.[10] In *Lennox*, our supreme court stated that the phrase "assessment of real or personal property and persons for taxation purposes" refers to the "substantive rules governing the making of assessments and valuations of property." *Lennox*, 372 Pa. at 376, 93 A.2d at 844. Following our rule of statutory construction, we presume that, when the General Assembly added section 3107–C(h)(8) to the Charter Law in 1997, the General Assembly intended the *Lennox* construction to be placed upon the language. Thus, section 3107–C(h)(8) means that a home rule charter may not

---

**7.** Section 2 of the Assessors Certification Act, Act of April 16, 1992, P.L. 155, 63 P.S. § 458.2.

**8.** Section 6(a) of the Assessors Certification Act, 63 P.S. § 458.6(a).

**9.** 63 P.S. § 458.2.

**10.** The Board argues that *Lennox* does not apply here because the facts and law are distinguishable. However, in considering *Lennox* here, we are concerned only with our supreme court's construction of the language used by the General Assembly in section 3107–C(h)(8) of the Charter Law.

give a second class county power to legislate with respect to the substantive rules governing the making of assessments and valuations of property by Certified Pennsylvania Evaluators.

Because this meaning is consistent with the trial court's decision, we conclude that the trial court did not err in determining the proper meaning of section 3107–C(h)(8) of the Charter Law.

## II. Assessment Law Conflict

The Board also argues that the trial court erred in allowing Allegheny County to create an assessment system that is contrary to the system required by the Assessment Law. We disagree.

■ Section 3107–C(a) of the Charter Law states that a second class county charter is subject to the limitations established by the Pennsylvania Constitution. 16 P.S. § 6107 C(a). Article IX, section 2 of the Pennsylvania Constitution states that a county with a home rule charter "may exercise *any* power or perform *any* function not denied by ... the General Assembly." Pa. Const. art. IX, § 2 (emphasis added). In section 3107–C of the Charter Law, the General Assembly specifically limits a home rule county's powers and functions with regard to the assessment of real or personal property and persons for taxation purposes. As indicated above, section 3107–C(h)(8) of the Charter Law only pertains to and restricts the county's power to interfere with the *substantive* rules governing the valuation of property by professional assessors. Thus, section 3107–C does *not* deny a home rule county the power to establish an assessment sys-

tem that is contrary to the Assessment Law. We conclude, then, that the trial court did not err in allowing the creation of an assessment system that is contrary to the Assessment Law.[11]

## III. Staggered Terms

■ Finally, the Board argues that the trial court erred in allowing Allegheny County to terminate the existing Board members because, under section 2(c) of the Assessment Law,[12] the members must serve a term of six years. We disagree.

In *Lyons v. City of Pittsburgh,* 137 Pa. Cmwlth. 330, 586 A.2d 469, 471, *appeal denied,* 527 Pa. 670, 593 A.2d 845 (1991), this court stated that "public officers possess no vested right to a public office[,] and a legislature or governing body may abolish a public office and oust the office holder prior to the completion of his term." We further stated that the universal rule is: "[municipal officers] go out with the charter under which they held [office], and the officers under the new charter take their places...." *Id.* Here, Allegheny County abolished the Board. (R.R. at 24a.) Therefore, the Board members have no further right to their positions.

Accordingly, we affirm.

## O R D E R

AND NOW, this 8th day of February, 2001, the orders of the Court of Common Pleas of Allegheny County, dated August 9, 2000, are hereby affirmed.

Concurring opinion by PELLEGRINI, J., joined by FLAHERTY, J.

Dissenting opinion by McGINLEY, J., joined by KELLEY, J.

---

**11.** We reject the Board's contention that an assessment system that is contrary to the Assessment Law is not allowed because the Assessment Law is "applicable in every part of this Commonwealth." *See* 16 P.S. § 6107–C(i)(2). The Assessment Law governs *only*

second class counties. In order for the Assessment Law to be applicable in every part of the Commonwealth, every county would have to be a second class county. That is absurd.

**12.** 72 P.S. § 5452.2(c).

PELLEGRINI, Judge, concurring.

I agree with the analysis contained in Judge McGinley's dissenting opinion that this Court's recent opinion in *In re Appointment of District Attorney,* 756 A.2d 711 (Pa.Cmwlth.2000) controls the outcome of this case. By not following the reasoning cited by Judge McGinley, I take it that the majority now inferentially repudiates that portion of *In re Appointment of District Attorney* holding that a home rule charter cannot contain provisions that are at variance with a law that is only applicable in certain parts of the Commonwealth. Because the majority inferentially has reversed that holding, I join in the majority opinion.

FLAHERTY, J., joins.

McGINLEY, Judge, dissenting.

I respectfully dissent to the majority's conclusion that the statutory language of Section 3107–C(h)(8) of the Second Class County Charter Law (Charter Law)[1], 16 P.S. § 6107–C(h)(8) is ambiguous.

Section 3107–C of the Charter Law provides:

. . . .

(h) With respect to the following subjects, the charter shall not give any power or authority to the county contrary to or in limitation or enlargement of powers granted by acts of the General As-

sembly which are applicable to counties of the second class:

. . . .

(8) The assessment of real or personal property and persons for taxation purposes.

Although not defined in the Charter Law, the term "assessment" is defined as "a valuation of property usually for the purpose of taxation." Webster's Third International Dictionary 131 (3d.1986). Section 3107–C(h)(8) of the Charter Law clearly reserves the authority to assess real or personal property for the purposes of taxation for the General Assembly.

The question then is whether the provisions of the Ordinance directly conflict with the statutory provisions of the Assessment Law and the Charter Law. Allegheny County Ordinance No. 15 (Ordinance) provides that the Board of Property Assessment, Appeals and Review of Allegheny County (Board) is to be replaced with three new entities, the Property Assessment Oversight Board (Oversight Board)[2], the Board of Property Assessment Appeals and Review (Appeal Board)[3] and the Office of Property Assessments (Office).[4] These entities are to assume the powers and duties originally granted to the Board by the General Assembly under Section 4 of the General County Assessment

---

1. Act of July 28, 1953, P.L. 723, added by Section 3 of the Act of May 20, 1997, P.L. 149.

2. Pursuant to Chapter 205 of the Administrative Code, the duties of the Oversight Board are: 1) making recommendations to County Council regarding assessment standards and practices; 2) confirming or rejecting the County Manager's appointment of the Chief Assessment Officer; and 3) certifying the assessments.

3. Pursuant to Chapter 207 of the Administrative Code, the duties of the Appeal Board are: 1) to oversee assessment appeals; 2) to certify assessment appeal decisions; and 3) to hear appeals.

4. Pursuant to Chapter 209 of the Administrative Code, the duties of the Office are: 1) to make all assessments and valuations of real property; 2) to supervise the same; and 3) to make initial recommendations to the Appeal Board concerning the tax-exempt status of real property.

Law (Assessment Law)[5], 72 P.S. § 5452.4.

Section 4 of the Assessment Law provides:

The Board of Property Assessment, Appeals and Review shall have power and its duty shall be:

(a) To make and supervise the making of all assessments and valuations of all subjects of taxation in the county as required by existing law.

. . . .

(b) To revise and equalize all such assessments and valuations.

(c) To hear all cases of appeals from assessments, and all complaints as to assessments, errors, exoneration and refunds.

(d) To pass upon and determine the amount of property of any organization or institution which is under the provisions of existing law entitled to exemption from taxation.

. . . .

(f) To perform and exercise all the powers and duties heretofore imposed or conferred upon the board for the assessment and revision of taxes in counties of the second class under the provisions of any existing law not repealed hereby.

5. Act of May 22, 1933, P.L. 853, *as amended.*

6. Section 206 of the Lackawanna Charter provides:
 (b) If a vacancy occurs, the executive committee of the political party of the person elected to the office in question shall submit a list of three persons to the judges of the court ... within five (5) days of the vacancy. The court shall appoint one of three (3) persons recommended to temporarily fill the vacancy.
 (c) A special election according to the Laws of the Commonwealth of Pennsylvania shall be held at the next primary municipal or general election to permanently fill the vacancy.

(g) To perform and exercise such other powers and duties as may be conferred or implied upon it by the provisions of this act or any other act of Assembly.

*In re Appointment of District Attorney,* 756 A.2d 711 (Pa.Cmwlth.2000), Michael J. Barrasse (Barrasse) resigned as district attorney of Lackawanna County and assumed the office of Judge. In accordance with Section 206(b) of the Lackawanna County Home Rule Charter (Lackawanna Charter), the Lackawanna County Republican Party submitted a list of three individuals to the Court of Common Pleas of Lackawanna County (common pleas court) to fill the vacancy in the office of district attorney. On January 11, 2000, the Lackawanna County Commissioners (Commissioners) scheduled a special election for April 4, 2000, to fill the vacancy. On January 18, 2000, the court appointed Andrew J. Jarbola (Jarbola) as district attorney for the remainder of Barrasse's term that is due to expire on December 31, 2001. The Commissioners and the Board of Elections appealed the appointment and challenged Jarbola's appointed term pursuant to the Lackawanna Charter.

Before this Court the issue was whether the Lackawanna Charter[6] was subordinate to Section 1404 of "The County Code" (Code)[7], 16 P.S. § 1404 and the Pennsylvania Election Code.[8] We noted:

335 Pa.Code § 1.2206(b)(c).

7. Act of August 9, 1955, P.L. 323, *as amended.* Section 1404 of Code provides:

 If any vacancy occurs in the office of district attorney ... the judges of the court of common pleas shall supply such vacancy by the appointment of a competent person to fill the office during the balance of the unexpired term.
 16 P.S. § 1404.

8. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591. Section 602 of the Election Code, 25 P.S. § 2752 mandates that county officers (Article IX, Section 4 of the

Our Pennsylvania Supreme Court addressed a similar issue in *Cali v. City of Philadelphia*, 406 Pa. 290, 177 A.2d 824 (1962) [9] .... The question for the Pennsylvania Supreme Court was whether the PHRC or the Election Code controlled.

Our Supreme Court reasoned that the home rule charter must not violate 'the Constitution of the United States, or the Constitution of Pennsylvania, or the Enabling Act of 1949, or the Election Code....' *Cali*, 406 Pa. at 306, 177 A.2d at 832. Additionally, our Supreme Court stated:

> It is unnecessary to decide whether the election of a Mayor of Philadelphia is a State-wide [sic] concern or purely a local matter which is of no concern to citizens of Pennsylvania at large. It will suffice to say that the Charter is subordinate to the Enabling Act, and if they conflict the Enabling Act takes precedence and prevails.

*Id.* at 312, 177 A.2d at 835.

Like in *Cali*, the County Code and the Election Code are of statewide importance. It is of no concern that the district attorney is a local county office which may or may not have powers of statewide impact. The County Code and the Election Code take precedence over the Lackawanna Charter. (footnotes omitted).

*Id.* at 714–15.

Here, pursuant to Section 4 of the Assessment Law the General Assembly

granted the Board the authority to assess the value of real property for taxation purposes and to hear all appeals from those assessments. The Assessment Law takes precedence over the Ordinance. Therefore, I would reverse.

KELLEY, J., joins in this dissent.

Pennsylvania Constitution lists a district attorney as a county officer) be elected at municipal elections held in odd-numbered years.

9. In *Cali*, Richardson Dilworth (Dilworth) was elected in November 1959 to a four-year term as mayor of the City of Philadelphia. Dilworth resigned on February 12, 1962, and pursuant to the Philadelphia Home Rule Charter [PHRC] the vacancy was to be filled

during the next municipal election. As a result, the city solicitor suggested that a primary election be held in 1962 to nominate a candidate for the vacancy. Anita Cali and James Burns sought to enjoin the City from conducting the primary and the Court of Common Pleas of Philadelphia County agreed.