# Miller v. Board of Property Assessment, Appeals and Review of Allegheny County

C.P. of Allegheny County, no. GD96-7312.

*Harlan S. Stone,* for plaintiffs.
*Terrence F. McVerry* and *George M. Janocsko,* for defendant County of Allegheny.
*John Cambest,* for defendant Allegheny County Council.

WETTICK JR., *J.,* February 8, 2002—The subject of this opinion and order of court is a petition for special relief filed on behalf of Allegheny County by the Allegheny County Law Department at the direction of the chief executive. Portions of the petition are opposed by county council, represented by the solicitor of county council.

In part I of this opinion, I consider whether the official county assessment of real property for 2002 is the assessment certified by the Property Assessment Oversight Board on January 8, 2002, or the assessment provided for in two ordinances adopted by county council on February 5, 2002.[1]

---

1. I recognize that the ordinances, which were adopted by a unanimous vote of county council, may be vetoed by the chief executive and, thus, would not become law unless the veto is overridden. This would be a time-consuming process (paragraph 5 of the answer to the petition for special relief states that county council has 30 days in which to override a veto), there is a significant likelihood that the veto will be overridden, and taxing bodies and taxpayers cannot wait. (For example, Pittsburgh property owners have already received tax bills based on the January 8, 2002 assessment and have only until February 28, 2002, to receive the two percent discount for early payment.) Thus, I am deciding the issue at this time.

In part II of this opinion, I consider whether changes to the existing assessment system that county council and the county executive wish to make are inconsistent with any of my prior orders of court. I am addressing this issue at this time in order that taxpayers and taxing bodies may know whether the assessed values of the 2002 assessment (as modified as a result of appeals or administrative changes) will be the assessed values for years 2003-2005.

## I.

Section 209.09 of the Administrative Code of Allegheny County, enacted on June 20, 2000, required the chief executive to present to county council a proposed ordinance which would, inter alia, set forth a methodology for the valuation of properties for taxation purposes, set standards for property assessments, and require annual reassessments through a professionally developed and maintained computer assisted mass appraisal (CAMA) system. Section 209.09 reads, in its entirety, as follows:[2]

"Section 209.09 assessment standards and practices ordinance

"The chief executive shall, after considering the recommendations of the Board of Assessment Oversight and of the chief assessment officer, present to county council a proposed ordinance for adoption that shall:

"(A) Set forth a methodology for the valuation of properties for taxation purposes;

---

2. On December 11, 2001, county council enacted amendments to Chapter 209 of the Administrative Code. Section 209.09 was renumbered as section 209.10 but was substantially unchanged.

"(B) Set standards for property assessments that shall include, at a minimum, an acceptable limit on the deviation of the common level ratio from the 100 percent predetermined ratio, an acceptable limit on the coefficient of dispersion, and an acceptable range for the price-related differential. These standards shall be applied to the assessments within each taxing jurisdiction and, in the City of Pittsburgh, to the assessments within each ward. The measurements against the standards shall be calculated following nationally recognized practices;

"(C) Require an annual reassessment through a professionally developed and maintained computer assisted mass appraisal system;

"(D) Require that the annual reassessment be applied to all properties, including tax-exempt property, public utility property, and residential trailers;

"(E) Establish standards for recommending tax exemption for properties; and

"(F) Establish procedure for changing values on an administrative basis (*e.g.,* catastrophic loss, errors in data, initial recommendation on tax exemption, etc.)."

Chapter 205 of the Administrative Code, enacted on June 20, 2000, created a Property Assessment Oversight Board that recommends assessment standards and practices to county council, confirms or rejects the appointment of the chief assessment officer, and certifies that assessments, as determined by the Office of Property Assessments, have been made in accordance with the county Assessment Standards and Practices Ordinance.[3]

---

3. On December 11, 2001, county council also amended Chapter 205 of the Administrative Code. The amendments are not relevant to this litigation.

For tax year 2001, the Oversight Board certified that a report prepared by the Office of Property Assessments was a true and correct copy of the total value of real property appearing in the assessment rolls of Allegheny County as of January 8, 2001.

On December 11, 2001, county council adopted the Allegheny County Assessment Standards and Practices Ordinance. Section 201.03 of the ordinance states that "[t]he *Office of Property Assessments through the chief assessment officer shall perform an annual valuation* of all objects of taxation in the county by the development and maintenance of a CAMA system." (emphasis added)

Section 301.03-C provides that if "the ratio study of the countywide valuations of objects of taxation for the applicable tax year meets the IAAO Performance Standards, then the chief assessment officer shall prepare a request for certification in accordance with section 401.01 of this ordinance." Under section 401.01, on or before the first business day of January of each year, the Office of Property Assessments through the chief assessment officer shall submit an official request for certification to the Oversight Board. Based on the official request for certification, the Oversight Board shall meet and vote to approve the certification on or before the fifteenth day of January. (Section 401.02.) Upon certification, the Office of Property Assessments shall provide the values of the objects of taxation contained in the certification to all taxing bodies within the county for use in levying property taxes. (Section 401.03.)[4]

---

4. Under section 205.06(C) of the Administrative Code of Allegheny County, the Oversight Board has the power and duty to "[c]ertify,

In accordance with the Administrative Code of Allegheny County and section 201.03 of the Assessment Ordinance, the Office of Property Assessments through the chief assessment officer performed an annual reassessment in year 2001 for use in year 2002 through a professionally developed and maintained computer assisted mass appraisal system. Pursuant to section 401.01 of the Assessment Ordinance, the chief assessment officer submitted an official request for certification to the Oversight Board. On January 8, 2002, the Oversight Board voted, by a two to one vote, to approve the certification pursuant to the provisions of section 401.02 of the Assessment Ordinance and section 205.06(C) of the Administrative Code. Upon certification, pursuant to section 401.03 of the Assessment Ordinance, the Office of Property Assessments proceeded "to cause its clerks to provide the values of the objects of taxation contained in the certification to all taxing bodies within the county for use in the levying of property taxes." At least one municipality (City of Pittsburgh) and one school district (Pittsburgh School District) have mailed tax notices in reliance on the certification.

On February 5, 2002, county council adopted an ordinance (first ordinance) which amended article II of the Administrative Code to eliminate the term "annual reassessment" and to provide for a countywide reassessment by the Office of Property Assessments every three years.

---

in a timely fashion, that assessments determined by the Office of Property Assessment have been made according to the Assessment Standards and Practices Ordinance. If the Oversight Board is unable to certify the assessments, the last certified assessments and assessments on new and altered property shall remain in effect."

(County council exhibit 1.) It changed the process of levying taxes by providing for a preliminary valuation on real property to be released April 1st of each year with the immediate right to appeal, and for the assessed values as of September 30th to be released on October 1st as the assessed value for taxation purposes in the subsequent year. Section 4 of the ordinance provided for special provisions for transition to three-year assessment. This section reads as follows:

"*Special provisions for transition to three-year assessment.*

"For the purposes of levying taxes for calendar year 2002, the valuations of real property as recorded as of December 31, 2001, will be used.

"The certified assessment issued for 2002 will serve as preliminary valuations for 2002. The values will be the basis of appeals during calendar year 2002. November 1, 2002, will be the date at which the assessed value of properties will be published for the purpose of establishing tax levies for tax year 2003."

The first ordinance also includes the following:

"Allegheny County taxing body shall file a mass appeal for the 71,000 property owners whose assessment was lowered for 2002. The 2002 lower assessment shall be accepted as evidence for reduction. All appeals shall be decided and findings processed before the discount date."

Thereafter, at the same meeting, county council enacted another ordinance (second ordinance) amending articles II, III, and IV of the Allegheny County Assessment Ordinance. (County council exhibit 2.)

Section 201.03 was amended to require the Office of Property Assessments through the chief assessment officer to perform triennial valuations. It provided that the "[a]ssessed values on objects of taxation for the first triennial assessment shall be presented to the Oversight Board in January of 2002 (as set forth in article IV hereof) for use in tax years 2003, 2004 and 2005 and shall repeat every third year thereafter in a similar pattern . . . . The Office of Property Assessments through the chief assessment officer shall perform such triennial valuation of all objects of taxation in the county by the development and maintenance of a CAMA system."

Section 401.01(A) creates a certification year beginning in year 2002 and continuing every third year thereafter. Section 401.02 provides that during each certification year, the assessed value of each property shall be its most recently certified value (as this may have been modified as a result of appeals or administrative changes). This section further provides that "Notwithstanding the foregoing, for each property (other than taxing body appealed properties (as defined below)) that has an assessment which, as a result of such triennial reassessment is less than the then-current assessment, such lower assessed value shall be used as the assessed value for such property in the current year (*i.e.,* for certification year 2002, if a property has an assessed value which is lower than the assessed value in 2001, the assessment shall be used for tax year 2002 as well as 2003, 2004, and 2005).[5]

---

5. Taxing body appealed properties is defined as the properties which since the most recent assessment were the subject of a successful appeal brought by an applicable county, municipality or school district.

Under this provision, the assessed value of a property for year 2002 is the lower of the 2001 or 2002 assessed value. Since the second ordinance is inconsistent with the first ordinance which uses only 2001 values, the second ordinance, being later in time, must be construed as modifying the first ordinance.

The legal issue that I address is whether the legislative body of Allegheny County may replace an assessment that was certified in accordance with existing law with an assessment that it subsequently created. The assessment which county council has created is an assessment based on the lesser of (i) the assessed value of a property as of December 31, 2001, or (ii) the assessed value of a property as certified by the Oversight Board for 2002. County council supports its action on the ground that it is moving to a triennial system through which appeals will be resolved before a reassessment takes effect and the assessment which it created for year 2002 is the most appropriate measure during this transitional period.

This dispute involves only the county executive and county council because the setting of the official assessment for a given year is not a matter in which taxpayers or municipalities/school districts are participants. While the law may permit taxpayers and taxing bodies to challenge the official countywide assessment, they cannot do so until it is determined whether the official assessment for Allegheny County for year 2002 is the assessment certified by the Oversight Board on January 8, 2002, or the assessment adopted by county council through the ordinances enacted on February 5, 2002. Once there has been a judicial determination of which assessment governs year 2002, taxpayers may file appeals, administrative changes may be made, and taxpayers and taxing bod-

ies with standing may initiate legislation for the purpose of altering the official county assessment for year 2002.

For several reasons, I find that county council lacked authority to substitute an assessment which it found to be more equitable for the assessment certified on January 8, 2002.

State law does not authorize a legislative body of a county to make, adopt, or alter assessments. Assessors make assessments. The role of the governing bodies of the county is limited to establishing assessment standards, creating an independent appeal process, and creating and funding a separate office of property assessment. The General County Assessment Law (72 P.S. §5020-101 et seq.) and the assessment legislation for the various classes of counties have (i) created separate boards that are responsible for making assessments (consider the Board of Property Assessment, Appeals and Review provided for in the Second Class County Law, 72 P.S. §5452.1 et seq.) and/or (ii) provided for assessments to be the responsibility of a chief assessment officer. See *e.g.,* 72 P.S. §5453.602 (Supp. 2001). While certain assessment legislation provides for county commissioners to consider appeals concerning individual properties, a county governing body has never had the authority to adopt or create the official assessment for the county. State law is clear that a county governing body which uses the assessed values in setting taxes cannot be the decision-maker in setting the assessed values for the county. This must be done by a separate entity.[6]

---

6. See Bert M. Goodman, *Assessment Law & Procedure in Pennsylvania,* 390-91 (PBI Press 1998 ed.) ("It is a clear conflict of interest for the governmental powers who levy the millage and raise tax revenue to also set the assessments.")

Counsel for county council contends that the county council has the power to establish the year 2002 assessment through the February 5, 2002 ordinances because of the power vested in the county under the Home Rule legislation. However, the county is subject to the following charter limitation set forth in the Second Class County Charter Law:

"(h) With respect to the following subjects, the charter shall not give any power or authority to the county contrary to, or in limitation or enlargement of, powers granted by acts of the General Assembly which are applicable to counties of the second class: . . .

"(8) The assessment of real or personal property and persons for taxation purposes." Act of May 20, 1997, P.L. 149, §3107-C(h)(8), 16 P.S. §6107-C(h)(8).

The Second Class County Assessment Law, enacted on June 21, 1939, 72 P.S. §5452.1 et seq., gives full responsibility and control over the assessment system to a board of property assessment, appeals and review. See generally, *Miller v. Board of Property Assessment Appeals and Review of Allegheny County,* 145 P.L.J. 501 (1997).

Under this legislation, it was the exclusive responsibility of the Assessment Board to make, revise, and equalize all assessments and to certify, on or before January fifteenth of each year, the total value of real property appearing in the assessment roll and taxable by the political subdivisions. 72 P.S. §5452.17a. The Assessment Board was also responsible for hearing assessment appeals.

As I have previously discussed, on June 20, 2000, county council added three chapters to the Administrative Code of Allegheny County: Chapter 205—Property Assessment Oversight Board; Chapter 207—New Board of Property Assessment Appeals and Review; and Chapter 209—Office of Property Assessments. These chapters created a new assessment system, replacing the Assessment Board with three entities that would perform the functions that were performed by the Assessment Board under the Second Class County Assessment Law.

In *Board of Property Assessment, Appeals and Review v. County of Allegheny,* 148 P.L.J. 284 (2000), I considered the request of the Assessment Board that I declare the provisions of the ordinance creating a different assessment system to be in violation of state law. It was the position of the Assessment Board that the county did not have the authority to change the Second Class County Assessment Law. The Assessment Board relied on Charter Limitation §3107-C(h)(8).

I ruled in favor of Allegheny County. I did so because I believed that Charter Limitation §3107-C(h)(8) only covered valuations of properties. Under the assessment system the county had created, valuations would be the responsibility of a separate office of property assessments. The certification would be performed by a separate body (*i.e.,* an oversight board). Appeals would be heard by an independent body. Consequently, I concluded that the county's Home Rule assessment system did not violate state law because bodies separate from the county council and the county executive were responsible for making and adopting the official county assessment.

My opinion relied on *Lennox v. Clark,* 372 Pa. 355, 93 A.2d 834 (1953), in which the Supreme Court was construing the Home Rule Act governing Philadelphia which provided that the city could not exercise powers contrary to or in limitation or enlargement of powers granted by acts of the General Assembly "providing for the assessment of real and personal property and persons for taxation purposes." The court ruled that this restriction did not bar Philadelphia from transforming county employees of the Board of Revision of Taxes (a county office) into city employees. The court stated:

"What was obviously intended by that provision of the statute was that the city should not have the power to legislate in regard to the substantive rules governing the making of assessments and valuations of property. For example, the city cannot change the provision of section 13 of the Act of 1939 (under which the board now operates) that all taxable property shall be valued and assessed by the assessors and by the board at the actual value thereof, in determining the price for which it would bona fide sell shall be considered but [shall] not be controlling." 372 Pa. at 376-77, 93 A.2d at 844.

In *Board of Property, Assessment, Appeals, Review and Registry of Allegheny County v. County of Allegheny,* 773 A.2d 816 (Pa. Commw. 2001), a divided Commonwealth Court affirmed my ruling. The court's opinion stated that there were two possible meanings to Charter Limitation 3107-C(h)(8) prohibiting local governments through their home rule charters from modifying the system for making valuations of property for taxation purposes. The word "assessment" could refer to the "entire plan or

scheme" for making assessments. However, it could also refer only to the valuation of property for taxation purposes. The court stated:

"Given the fact that state law requires individuals who make valuations of real property for taxation purposes in counties throughout the Commonwealth to have special expertise, *section 3107-C(h)(8) of the Charter Law could be read to prohibit second class counties from interfering with the professional valuation work done by certified Pennsylvania evaluators within such counties.* Because this represents a second reasonable construction of section 3107-C(h)(8), we conclude, like the trial court, that the statutory language is ambiguous." *Id.* at 820. (emphasis added)

The court ruled that I did not err in determining the proper meaning of section 3107-C(h)(8) of the Charter Law:

"In section 3107-C of the Charter Law, the General Assembly specifically limits a home rule county's powers and functions with regard to the assessment of real or personal property and persons for taxation purposes. As indicated above, section 3107-C(h)(8) of the Charter Law only pertains to and restricts the county's power to interfere with the *substantive* rules governing the valuation of property by professional assessors." *Id.* at 821.

The February 5, 2002 ordinances would violate Charter Limitation 3107-C(h)(8) because the county legislative body is substituting its judgment, concerning the valuation of property, for the judgment of professional and independent entities that established the official assessment for Allegheny County. If the county, through

an ordinance, may establish the official assessment for the county, the provisions of Charter Limitation 3107-C (h)(8) would have no meaning. In *Board of Property, Assessment, Appeals, Review and Registry, supra,* the Commonwealth Court clearly stated that Charter Limitation 3107-C(h)(8) prohibits the county from enacting ordinances that interfere with professional evaluation work. Thus, the county cannot adopt an ordinance which sets assessed values.

There is a second reason why the February 5, 2002 ordinances are invalid. State law uses a certification procedure for establishing the official county assessment for a given year. Once the assessment has been certified, taxing bodies and taxpayers may rely on the assessment. This assessment cannot be altered by a county governing body at a later date because of a dissatisfaction with the values. In the present case, the assessment was certified under the procedures provided for by existing law. After the date of certification, the county has no authority to retroactively alter assessment standards or to retroactively replace the certified assessment with an assessment that its governing body finds to be fairer. As counsel for the Pittsburgh School District recognized at pages 4-5 of its amicus brief, "If county council's position is accepted by the court, there is nothing to prevent county council from changing assessments periodically throughout the year thus destroying any stability to the tax base and rendering the certification process a nullity."

In addition, the February 5, 2002 county ordinances bypass any certification procedures. In January 2001, the

Oversight Board certified an assessment for 2001 submitted by the Office of Property Assessments. In January 2002, the Oversight Board certified a reassessment for year 2002 submitted by the Office of Property Assessments. No body has ever certified the hybrid assessment for year 2002 set forth in the February 5, 2002 ordinances.

Finally, there is no basis in the law for an ordinance directing the county to file appeals on behalf of property owners to those assessments which the ordinance creates. County council is saying that the county must assist property owners in defeating an assessment that it created.

For these reasons, I rule that the January 8, 2002 assessment is the official assessment of Allegheny County for 2002.

## II.

The petition for special relief also requests that I clarify prior orders of court which I have entered with respect to matters covered in the February 5, 2002 county ordinances that are supported by the county executive. The relief is sought because there may be language in prior court orders which state or suggest that the county may not proceed with any assessment system that does not provide for annual countywide reassessments.

The petition for special relief requests that I permit the county to implement a system providing for a countywide reassessment every three years with 2003 serving as the initial base year and with the 2002 certified valuations serving as the valuations for this base

year. The county executive and county council believe that annual countywide reassessments of real property require the county to devote extensive resources to the appeal process, which could otherwise be used to improve the assessment system. Taxpayers may be forced to file and pursue appeals on an annual basis. Also, taxpayers want greater certainty as to the amount of real estate taxes they may owe.

I do not disagree with the position of county council and the county executive that an assessment system which provides for countywide reassessments every three years protects the integrity of the assessment system while minimizing the burdens imposed on the county and the taxpayers.[7] While there may be language in prior court orders referring to annual countywide reassessments, this would be because the county's proposals provided for annual reassessments.

It is my understanding that few, if any, counties conduct annual reassessments. There is nothing inconsistent with a countywide reassessment every three years and my previous rulings requiring the county to implement an assessment system that complies with state law.[8]

---

7. Under an assessment program that provides for countywide reassessments every three years, revisions may be made in any year for any of the reasons described in 72 P.S. §5452.13. Also, administrative changes may be made at any time as provided for in procedures adopted pursuant to section 209.09(F) (as amended, now numbered section 209.10(F)) of the Administrative Code of Allegheny County.

8. The Second Class County Code does not prohibit the use of a base year. See 72 P.S. §5452.1a which includes a definition for "base year."

I recognize that the triennial assessment system provided for in the Second Class County Assessment Law was found to be unconstitutional. However, the basis for the unconstitutionality was a reassessment of one-third of the county each year. Consequently, taxpayers in one area would be paying taxes on 1980 values, taxpayers in a second area would be paying taxes on 1981 values, and taxpayers in a third area would be paying taxes on 1982 values. The February 5, 2002 ordinances have corrected this problem. The procedure set forth in the February 5, 2002 county ordinances provides for a single countywide reassessment every three years so taxpayers throughout the county will be paying taxes based on the same year.

In addition, the use of year 2002 as a base year for 2003 is not inconsistent with my previous rulings. The apparent purpose is to give the county two "appeal free" years (2003 and 2004) in which to improve the accuracy of the descriptions of properties throughout the county and to use year 2005 to decide appeals for the 2006 base year.

Finally, the petition for special relief requests that the county be permitted to use year 2001 values reduced through the appeal process for year 2002 for those taxpayers whose assessments were increased in year 2002 from 2001 assessments established through appeals of the 2001 assessments. It is the position of the county that the rulings made in the appeal process in year 2001 should apply in year 2002 because there has been a "breakdown in the assessment machinery." The county believes that many of the reductions of 2001 assessed

values made in the appeal process were based on evidence showing that the actual characteristics of the property varied from the characteristics in the assessment records. This information as to the actual characteristics of the properties should have been, but was not, made available to the Assessment Office before it established the year 2002 values. The county believes that it will be making administrative changes to many of these properties that will alter the year 2002 assessments, so the year 2001 assessments for these properties may be more accurate than the 2002 assessments.

The county is a taxing body. It should not be permitted to take advantage of the breakdown in the assessment process where this will result in higher assessments (*i.e.,* more taxes). Consequently, the 2002 assessed values will apply where the 2002 assessed values are less than the 2001 assessed values following the appeal process (*i.e.,* taxing body appealed properties). However, where an assessed value for 2002 is higher than the assessed value for 2001, as established in the appeal process, and there have not been physical changes to the property, the 2002 assessed value shall be reduced, only for year 2002, to the 2001 assessed value following the appeal (with the right of the taxing bodies to appeal).[9]

There is legislative support for this concept of using in the subsequent year the values established for the prior year as a result of an assessment appeal. See the Second

9. This applies only for year 2002. The 2002 assessment, unless modified in 2002 by an administrative change or an appeal, applies for years 2003-2005. The county shall give adequate notice to the taxpayer.

Class A and Third Class County Assessment Law at 72 P.S. §5349.5 (Supp. 2001) which reads as follows:

"(a) Except as provided in subsection (b) of this section, for purposes of taxation, when there is a change in assessment made by the board as a result of an assessment appeal, a taxing district shall apply the changed assessment in computing taxes imposed in the next fiscal year of the taxing district following the fiscal year in which the board heard the appeal and rendered its decision."

Generally, a home rule municipality may adopt any feature of an assessment system recognized in state law.

*Summary*

### A.

The governing body of a county has no power to change assessments that were established in accordance with existing law. In Allegheny County, the Office of Property Assessments has the sole responsibility for valuing property and the Property Assessment Oversight Board has the sole responsibility for certifying assessments. Under state law, the governing body of a county may not establish or change assessments. In 2001, in the case of *Board of Property, Assessment, Appeals, Review and Registry of Allegheny County v. County of Allegheny*, 773 A.2d 816, 820 (Pa. Commw. 2001), the Pennsylvania Commonwealth Court said that "state law requires individuals who make valuations of real property for taxation purposes in counties throughout the Commonwealth to have special expertise" and that section 3107-C(h)(8)

of the Charter Law prohibits the governing body of a second class county "from interfering with the professional valuation work done by certified Pennsylvania evaluators within such counties."

Under state law, an assessment for a particular year becomes the official assessment for that year once it has been certified. If the position of county council would become the law of Pennsylvania, there would be nothing to prevent county council from changing assessments periodically throughout the year, thus destroying any stability to the tax base and rendering the certification process a nullity. Municipalities and school districts cannot perform their responsibilities unless they can establish budgets and set millage based on the certified assessment.

For both of these reasons, the assessment certified by the Oversight Board on January 8, 2002 is the official assessment for Allegheny County for year 2002.

## B.

In the future, the county is permitted to conduct countywide reassessments every three years, rather than every year. The county may use 2003 as a base year for 2004 and 2005. It may use the 2002 assessed values (as modified by appeals and administrative changes) for the 2003 values. Since 2003 is a base year, these values will also apply to 2004 and 2005.

In 2003 and 2004, the Assessment Office will correct and update data concerning the characteristics of the properties throughout the county. In early 2005, the Office of Property Assessments, through the use of a CAMA sys-

tem as provided for in the county Assessment Ordinance, may establish values for the 2006 base year. Taxpayers and taxing bodies will be given the opportunity to file appeals and receive decisions in 2005 in order that taxes are paid on the values as determined through the appeal process.

## C.

There is a class of taxpayers whose assessments were increased in year 2002 from 2001 assessments that were reduced through the appeal process. The county states that, as to these taxpayers, there has been a breakdown in the assessment machinery. According to the county, many of the reductions of the 2001 assessed values made in the appeal process were based on evidence showing that the actual characteristics of the properties varied from the characteristics in the assessment records. This information should have been, but was not, furnished to the Office of Property Assessments when it established the year 2002 values. The county states that it will be making administrative changes to many of these properties that will alter the year 2002 values, so the year 2001 reduced assessments for these properties—because of the county's failures to follow its assessment procedures— may be more accurate than the 2002 assessments. There is also legislation governing second class A and third class counties which provides that when there is a change in an assessment made by the assessment board as a result of an assessment appeal, the taxing district shall apply the changed assessment in computing taxes imposed in the next fiscal year following the fiscal year in which the board heard the appeal and rendered its decision.

For year 2002 only, property owners whose assessments for year 2002 were increased following a reduction in 2001, as a result of an assessment appeal, will pay taxes based on the values established through the 2001 assessment appeal.

## ORDER

On February 8, 2002, upon consideration of the petition for special relief filed by Allegheny County, it is ordered, adjudged and decreed that:

(1) the county is permitted to implement an assessment system under which there is a countywide reassessment every three years;

(2) the county is permitted to implement an assessment system whereby valuations for all properties are certified and distributed early in the year prior to the base year to permit taxpayers and taxing bodies to appeal the valuations and receive decisions on the appeals in this prior year in order that taxes are paid based on the values as determined by the appeal process;

(3) the county is permitted to implement the assessment system described in paragraph one of this court order by using 2003 as the initial base year and by using the 2002 certified values (as modified as a result of appeals or administrative changes) as the values for the base year;

(4)(a) where there was a reduction in the 2001 assessment (and no appeal is pending) as a result of an assessment appeal of only the 2001 assessment, for 2002 only, the reduced 2001 value (if lower than the assessed 2002 value) shall be the assessed value on which the taxing

bodies shall compute taxes for the 2002 calendar/fiscal year;

(b) subparagraph (4)(a) does not preclude a taxing body from filing an appeal for 2002 from the reduced 2001 value;

(c) subparagraph (4)(a) applies only for year 2002. In the absence of another countywide reassessment, the assessed value established through the January 8, 2002 assessment will be the assessed value for subsequent years (unless modified in 2002 as a result of an appeal or administrative change);

(5) subject to the provisions of paragraph (4) of this court order, the property values certified by the Oversight Board for the 2002 tax year are the property values on which county, municipal, and school district real estate taxes will be computed for the year 2002; and

(6) ordinances providing for the use of 2001 valuations for 2002 would violate state law.